Argued and submitted October 23, 1991, affirmed April 22, reconsideration denied July 29, petition for review allowed October 27, 1992 (314 Or 573)

Doyle CAPLENER;
John V. Caplener;
Thomas G. Marks, trustee of
the bankruptcy estate of Michael L. Caplener;
and Caplener Brothers,
*Appellants,*

*v.*

UNITED STATES NATIONAL BANK
OF OREGON,
*Respondent.*

(A8511-06801; CA A65555)

831 P2d 22

Michael L. Williams, Portland, argued the cause for appellants. With him on the opening brief were Jeffrey A. Bowersox and Williams, Troutwine & Bowersox, P.C., Portland. With him on the reply brief was Williams & Troutwine, P.C., Portland.

Gary Roberts, Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson & Wyatt, Portland.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

This is an action by a partnership, Caplener Brothers (the partnership), and the individual partners, Doyle and John Caplener and Thomas Marks, as trustee of the bankruptcy estate of partner Michael Caplener (the individual partners), against United States National Bank (Bank), for damages allegedly caused by Bank's breach of an oral agreement to lend money to the partnership.[1] The trial court

[1] None of the complaints shows Thomas G. Marks, *as trustee of the bankruptcy estate of Caplener Brothers*, as a plaintiff. The sixth amended and last complaint lists as plaintiffs "DOYLE CAPLENER, JOHN V. CAPLENER, CAPLENER BROTHERS, an Oregon Partnership, and THOMAS G. MARKS, *Trustee of the Bankruptcy Estate of MICHAEL L. CAPLENER.*" After defendant moved against the complaint, plaintiffs filed a Memorandum in Opposition to the Motion and, for the first time, the caption shows as plaintiffs: "DOYLE CAPLENER, JOHN V. CAPLENER, THOMAS G. MARKS, trustee of the bankruptcy estate of Caplener Brothers, an Oregon partnership, THOMAS G. MARKS, trustee of the bankruptcy estate of Michael L. Caplener." Thus, that caption *omits* the partnership as a party and includes Marks as trustee of the partnership, although he has never been named in a complaint and, in that capacity, has never been added as a party and no order has been entered substituting him in that capacity for the partnership. The Amended Order granting Bank's motion, prepared by plaintiffs' counsel, uses the new caption substituting the trustee for the partnership.

All subsequent trial court documents, including the judgment, use the caption that names Marks, as trustee of the bankruptcy estate of the partnership, as a plaintiff. The caption on the judgment lists as plaintiffs:

"DOYLE CAPLENER,
JOHN V. CAPLENER,
THOMAS G. MARKS, trustee of
	the bankruptcy estate of
	Caplener Brothers,
	an Oregon partnership,
THOMAS G. MARKS, trustee of
	the bankruptcy estate of
	Michael L. Caplener."

The text of the judgment, however, does not mention Marks as trustee for the partnership; instead, it refers to the partnership. It also states that "all claims of plaintiffs Doyle Caplener, John V. Caplener and Thomas G. Marks, trustee of the bankruptcy estate of Michael L. Caplener" are dismissed. Thus, other than in the caption, the partnership is a plaintiff, and Marks is referred to only in his capacity as trustee for Michael.

The caption on the notice of appeal shows these appellants:

"DOYLE CAPLENER,
JOHN V. CAPLENER,
THOMAS G. MARKS, Trustee of the Bankruptcy Estate
	of MICHAEL L. CAPLENER, and
CAPLENER BROTHERS,
	an Oregon partnership."

We read that caption as naming the partnership as an appellant and Marks as an appellant only in his capacity as trustee for the bankruptcy estate of Michael. The

dismissed some of the claims on the pleadings, entered summary judgment for Bank on others and entered a judgment in accordance with ORCP 67B. The partnership and Marks, as trustee, seek reversal of the summary judgment on the fourth amended complaint that dismissed all claims except breach of contract and "detrimental reliance/promissory estoppel" claims. The individual partners, including Marks, seek reversal of the court's dismissal of their individual claims for breach of contract and promissory estoppel alleged in the sixth amended complaint for failure to state a claim. ORCP 21A(8). Doyle and John seek reversal of the court's dismissal of their negligence claim, alleged in the fifth amended and supplemental complaint, for failure to state a claim. ORCP 21A(8). The partnership and Doyle seek reversal of the trial court's striking from the fourth amended complaint the allegations of damages for causing Doyle's heart attack.

We state the facts from the record on summary judgment in the light most favorable to plaintiffs.[2] Doyle and his sons, John and Michael, were partners in a trucking business. Since 1983, the business had had a successful banking relationship with Bank. The individual partners executed guarantees to Bank in September, 1984, contemporaneously with a loan to the partnership for the purchase of

State Court Administrator's office directed the parties to change the caption to conform to the caption on the judgment, and the parties did so.

Notwithstanding that instruction to the parties, Marks, as trustee for the partnership, has never been named in a complaint as a party to this action, has never been added as or substituted for a party, did not appear below, is not dealt with separately in the judgment, was not named in the notice of appeal, and is not treated as a party by the parties in their briefs. We conclude that he is not a party to this proceeding. Accordingly, Marks, as trustee of the bankruptcy estate of Caplener Brothers, has been stricken from the caption of the case.

[2] Three of the assignments of error raise issues that must be decided on the pleadings. Only one of the assignments relates to the court's granting of Bank's motion for summary judgment. With respect to that assignment, the *material* facts do not appear to be in dispute, and the assignment raises only legal issues. For an understanding of the context of the legal issues, however, it is necessary for us to state some facts that *are* in dispute. Plaintiffs take their statement of facts from their fifth amended complaint. They do not provide references to affidavits, depositions or other evidence in the record on summary judgment. Accordingly, when we refer to a fact drawn from allegations of the fifth amended complaint, we note that the fact is "alleged." Bank refers to affidavits submitted on its behalf that plaintiffs do not contradict or contest on appeal, other than by reference to their fifth amended complaint; accordingly, for purposes of the summary judgment, we treat those facts as true. *See Bewley v. Evanite Fiber Corp.*, 111 Or App 314, 826 P2d 74 (1992).

trucks and trailers. In December, 1984, the partners began to negotiate with Bank for a loan of $1.5 million for the purchase of lumber futures on the Chicago commodities market. Plaintiffs allege that Bank agreed "to back the transaction to its conclusion" and that, in reliance on Bank's commitment, the individual partners, on behalf of the partnership, began to make commitments for the purchase and sale of lumber. Plaintiffs allege that Bank made a deposit of $50,000 into the partnership checking account to cover the first required expenditure for the commitments. On March 6, 1985, Bank extended credit to the partnership for $75,000, which plaintiffs allege was part of Bank's commitment to fund the purchase of lumber futures.

Plaintiffs allege that, on March 13, 1985, Bank notified them that it would not complete the financing for the purchase of lumber and that, because they could not obtain alternate financing, they were forced to liquidate the lumber purchase contracts at a substantial loss to the partnership and to the individual partners, ultimately forcing the partnership and Michael into bankruptcy.

From April to October, 1985, Bank and plaintiffs negotiated unsuccessfully for extensions of other loans then due Bank by the partnership, and the partnership defaulted. On November 2, 1985, the individual partners filed the original complaint in this proceeding, alleging only that Bank had breached an oral agreement to lend $1.5 million to the individual partners for the purchase of lumber and that, as a result of the breach, the individual plaintiffs had suffered damages of approximately $444,000.

In December, 1985, Bank set off approximately $24,000 from the partnership's operating account against loans on which the partnership had defaulted. In January, 1986, Bank filed an action against the partnership on the promissory notes and for foreclosure of the collateral securing those notes. In May, 1986, Bank obtained a judgment for approximately $320,000 and foreclosure of all collateral.

On June 12, 1986, the partnership filed a petition under Chapter 11 of the Bankruptcy Code. 11 USC § 101 *et seq.* The schedule of liabilities represented that the debt owed by the partnership to Bank was approximately $317,000. It is

not clear whether that amount includes approximately $125,000 advanced in March, 1985, allegedly pursuant to Bank's oral commitment to lend the partnership $1.5 million. Doyle, on behalf of the partnership, stipulated in the bankruptcy proceeding that Bank "now holds valid, attached, perfected, choate and enforceable security interests in and a lien upon all personal property described in the existing loan documents * * *." The schedule also showed the individual partners' breach of contract action against Bank as a contingent claim of $444,516.

In September, 1986, Doyle, on behalf of the partnership, stipulated in the bankruptcy proceeding to an order authorizing post-petition financing by Bank of the partnership's operations. Bank continued to finance the business with a revolving line of credit until the partnership's assets were liquidated.

In October, 1986, Bank filed proof of its claim for approximately $311,000, to which no objection was filed. In May, 1987, the partnership filed an amended disclosure statement in the bankruptcy proceeding, disclosing its contract claim against Bank, representing its value to be $451,000. The majority of the partnership's creditors, including Bank, approved the partnership's plan for reorganization based on a proposed sale of the business; however, in September, 1987, the sale fell through. The partnership then moved for and obtained an order converting its case to a Chapter 7 bankruptcy.

In November, 1988, Michael filed an individual petition in bankruptcy under Chapter 7, disclosing a contract claim against Bank for $444,000. In January, 1989, Michael filed an amended schedule, but did not change the value attributed to the claim against Bank. In February, 1989, Michael was discharged of his debts. His bankruptcy estate has not been closed.

On May 4, 1989, the parties to this proceeding stipulated to an order lifting the bankruptcy stay as to the partnership. The partnership's assets were liquidated and, on May 10, 1989, the trustee was discharged, and the partnership

bankruptcy estate was closed with payment to secured creditors only.[3]

On July 10, 1989, the individual partners filed their second amended complaint in this proceeding, adding eight new claims, which they characterized as "counts." The claims included: breach of an express agreement to loan money; breach of an implied agreement to loan money; detrimental reliance/promissory estoppel; breach of the covenant of good faith and fair dealing; breach of the duty of good faith and fair dealing (stated in tort); intentional interference with contract; intentional interference with business relations or economic expectancy; and intentional infliction of severe emotional distress. The individual partners' third amended complaint, filed on July 21, 1989, included two additional "counts" for negligence and breach of fiduciary duty.

On September 25, 1989, the court denied Bank's motion to dismiss the non-contract claims on the ground that they were barred by the Statute of Limitations, holding that the claims relate back to the original complaint. ORCP 23C. The individual partners subsequently filed a fourth amended complaint, which added an allegation seeking damages for Doyle's heart attack. Bank moved to dismiss that complaint or to substitute the partnership as the plaintiff, on the ground that the partnership, and not the individual partners, is the real party in interest. The trial court agreed that the partnership was a real party in interest and that it should be named as a party. It also concluded, however, that the individual partners could maintain their claims to the extent that they might have suffered damages as result of Bank's conduct, and they remained as plaintiffs.

On November 16, 1990, the court granted summary judgment to Bank against the partnership and Michael on all claims in the fourth amended complaint, except the "counts" of breach of an express agreement to loan money and detrimental reliance/promissory estoppel, on the ground that the partnership and Michael were barred from asserting claims

---

[3] Plaintiffs state in their brief that the partnership obtained an order of discharge. They do not direct us to an order of discharge in the record, and we have not found one. Under Chapter 7, a partnership is not eligible for *discharge* of its debts. 11 USC § 727(a)(1).

other than those asserted in the original complaint filed in 1985 and disclosed in the bankruptcy proceeding.

Plaintiffs then filed their fifth amended complaint, for the first time naming the partnership as a plaintiff.[4] That complaint alleged only three claims: Breach of contract and detrimental reliance/promissory estoppel on behalf of the partnership only and a negligence claim on behalf of all plaintiffs. The court granted Bank's motion to dismiss the negligence claim.

On February 14, 1990, after the partnership's trustee was discharged, a document was filed by which the trustee purported to abandon "any claim of ownership or other interest in the lender liability claim of plaintiff Caplener Brothers * * * against defendant United States National Bank of Oregon[,]" pursuant to 11 USC § 554(c).

Plaintiffs' sixth amended complaint alleged only the claims for breach of an express agreement to loan money and for detrimental reliance/promissory estoppel. The court granted Bank's motion to dismiss those claims as to the individual partners, on the ground that they could not maintain individual claims for breach of an agreement to loan money to the partnership. Unless one or more of plaintiffs prevail on one or more of their assignments of error and unless Bank does not prevail on its cross-assignment, the case will go to trial only on claims by the partnership for breach of an express agreement to loan money and for detrimental reliance/promissory estoppel, with damages not to exceed $451,000.

We consider Bank's cross-assignment of error first. It contends that the trial court erred in denying its motion to dismiss the tort claims alleged in the third amended complaint, characterized as breach of the duty of good faith and fair dealing, intentional interference with contract, intentional interference with business relations or economic expectancy, intentional infliction of severe emotional distress, negligence and breach of fiduciary duty, on the ground that those claims had not been brought within the 2-year Statute

---

[4] We note that, under ORS 68.530(5), a partnership is dissolved by law on the bankruptcy of any partner or the partnership. No issue is raised concerning the partnership's ability to maintain this action.

of Limitations. The court ruled that those claims relate back to the original breach of contract claim; therefore they are not time-barred. We agree with Bank that they do not relate back.

ORCP 23C provides, in part:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Plaintiffs contend that the tort claims relate back to the breach of contract claim alleged in the first amended complaint, because they arise out of the same transaction.[5] Even assuming that to be true, more than that is required. In *Evans v. Salem Hospital*, 83 Or App 23, 31, 730 P2d 562 (1986), *rev den* 303 Or 331 (1987), we summarized the leading cases discussing relation back when new claims are asserted against the same defendant:

"There is a seeming duality in the analysis set forth in *Welch [v. Bancorp Management Services*, 296 Or 208, 675 P2d 172 (1983)]*, Parker [v. May*, 70 Or App 715, 690 P2d 1125 (1984), *rev den* 299 Or 31 (1985)] and *Sizemore [v. Swift*, 79 Or App 352, 719 P2d 500 (1986)]: [E]ach opinion suggests a legal inquiry which focuses on whether the original pleading is sufficient to apprise the defendant that the plaintiff has *a* claim arising out of the conduct, occurrence or transaction; however, each opinion explains its holding as turning on whether there is a similarity or relationship between the original and new claims sufficient to put the defendant on notice that the *specific* claim which is later asserted could arise out of the conduct, occurrence or transaction originally pleaded. *We conclude that a new claim cannot relate back to an earlier pleading unless there is at least enough of a nexus between the claims for the defendant to have been able to have discerned from the first that the existence of the second was a possibility.* In the present case, the connection between the original and added claims was tenuous to the point of non-existence, and there was no

---

[5] Plaintiffs contend that it is impossible to tell from the third amended complaint when the facts alleged occurred; therefore, the pleadings do not show that the action was not commenced within the time limited by statute. ORCP 21A(8). Although it is true that plaintiffs did not supply dates for every event alleged, the allegations in the complaint are sufficient to show that the conduct material to the allegations of each tort claim must have occurred before July 10, 1987.

possibility that notice of the later claims could have been supplied by the acts alleged in the earlier complaint." (Footnote omitted; some emphasis supplied.)

In *Evans*, the original claim was for wrongful death, brought by the personal representative of the decedent's estate. The amended complaint added a claim by the decedent's wife and son for intentional or reckless infliction of emotional distress. We held that the facts alleged in the original complaint alleged no more than negligence that resulted in the decedent's death and could not have apprised the hospital that a claim for the wife's and son's emotional distress could be asserted later.

Here, the original breach of contract claim could not have apprised Bank of the 6 tort claims that were added almost 4 years later. The first amended complaint alleged, in material part:

"[I]n December, 1984, [Bank,] through its agents and loan officer * * * agreed to loan Plaintiff's [*sic*] $1,500,000.00 for the purchase, sale and distribution of certain wood products, that on or about January 9th, 1985, Plaintiff's [*sic*] met again with [Bank] and confirmed the loan agreement at 14% interest with the inventory as collateral and thereafter began purchasing the subject wood products, in reliance upon said agreement.

"4.

"That on or about March 1, 1985, [Bank] deposited the first $75,000.00 of the loan in Plaintiff's [*sic*] checking account with the balance of the loan to be deposited by March 15, 1985.

"5.

"That on or about March 13, 1985, [Bank] notified Plaintiffs that it would not complete the balance of the loan, in breach of its agreement.

"6.

"As a foreseeable result of the breach of said agreement by [Bank], Plaintiffs were forced to liquidate their purchases of wood products at a loss of $193,398.88 and Plaintiffs were caused to lose a profit in the sum of $235,610.00 and Plaintiffs were caused to lose continuing interest charges that at present are $12,252.00.

"WHEREFORE, Plaintiffs demand judgment against [Bank] in the full sum of $444,516.72 general damages and for their costs and disbursements incurred herein."

The new claims contain new factual allegations: failure to cooperate; interference with operations; seizure of funds without authorization or notice; intentional interference with contract; improper use of access to confidential and economic data; unreasonable insistence on over-collateralization of the loan; intentional interference with business relations or economic expectancies; improper assessment of fees; improper use of threats of default and liquidation; retaliation and intimidation; intentional infliction of severe emotional distress; threats of economic and personal misery; infliction of Doyle's heart attack; negligence; and breach of fiduciary duty.

As alleged in the first amended complaint, the conduct giving rise to the breach of contract claim occurred over a 3-month period. The second and third amended complaints allege conduct occurring over a period of nearly 4 years. The original breach of contract claim sought $444,000 general damages only for breach of contract. The second and third amended complaints sought damages totalling $11,169,000, plus punitive damages "in a reasonable amount." The fourth amended complaint sought punitive damages equal to 10 percent of Bank's net worth. We conclude that the facts alleged in the first amended complaint could not have apprised Bank of the possibility that the tort claims would be asserted later.

Accordingly, the trial court erred in denying Bank's motion to dismiss the claims of breach of the duty of good faith and fair dealing, intentional interference with contract, intentional interference with business relations or economic expectancy, intentional infliction of severe emotional distress, negligence and breach of fiduciary duty. All of them are barred by the Statute of Limitations. Given our holding on the cross-assignment, it is unnecessary for us to reach plaintiffs' third and fourth assignments of error, both of which relate to the court's subsequent rulings on those tort claims.

In their second assignment of error, plaintiffs contend that the court erred in granting Bank's motion to dismiss the claims of breach of contract and detrimental

reliance/promissory estoppel, alleged by the individual partners in the sixth amended complaint, for failure to state a claim. ORCP 21A(8). They argue that the individual partners' claims are premised on their status as guarantors of the alleged loan to the partnership. Three cases, *Johnston v. The Oregon Bank*, 285 Or 423, 591 P2d 746 (1979); *Weiss v. Northwest Accept. Corp.*, 274 Or 343, 546 P2d 1065 (1976); and *Van Petten v. The Oregon Bank*, 42 Or App 367, 600 P2d 507 (1979), provide the criteria for determining when a guarantor may assert a claim independently of the principal obligor.[6] We assume, without deciding, that the guarantees here were given in return for a contemporaneous promise to lend money. *See Weiss v. Northwest Accept. Corp. supra*, 274 Or at 349; *Van Petten v. The Oregon Bank, supra*, 42 Or App at 373. The claims fail, nonetheless, because there are no allegations that the individual partners' damages were caused by the existence of the guarantees. As alleged, all damages were caused by Bank's failure to loan the partnership $1.5 million and the other acts committed against the

[6] *Van Petten v. The Oregon Bank, supra*, is cited by plaintiffs for the proposition that a guarantee of a loan to a *partnership*, as opposed to a corporation, may be a basis for a personal cause of action by the guarantor. In that case, the plaintiff corporation was a general partner in a partnership, seeking damages for the bank's failure to grant the partnership additional credit after it had allegedly been induced to enter into the guarantee in return for the bank's promise to lend money to the partnership. The only question that the court addressed is whether the trial court erred in striking the claim on the ground that a lender may not be liable in contract to a guarantor for breach of an agreement to lend money to a third person. We said:

"It is well known that banks often lend money to a person only if the loan is guaranteed by a third person. We have no problem in hypothesizing a set of facts where a guarantor sustains damage because a bank fails to advance funds which it had agreed to advance, particularly if the breach occurs midway through an ongoing lending arrangement. We therefore hold, consistent with the statement from *Johnston, supra* * * * 'that a guaranty of a loan to a corporation *can be* the basis for a personal cause of action against the lender to whom the guaranty was given,' when the guaranty is given in return for the contemporaneous promise to lend money." 42 Or App at 373. (Emphasis in *Johnston.*)

With that comment, we reversed the trial court's dismissal of the claim. Our holding, which specifically refers to "a guaranty of a loan to a corporation," distinguishes it from this case, which involves a partner's guaranty of a partnership debt. The opinion is not authority for a rule that a guarantee of a debt of a partnership may form the basis for an individual claim by the guarantor.

Because we conclude for another reason that the guarantees given by the individual partners here do not provide a basis for an individual claim by the guarantors, we do not decide whether it is possible for a partner to maintain an action based on his guarantee of a loan to the partnership, as opposed to a loan to a corporation.

partnership. Because the individual partners were general partners, they were liable for all partnership debts, without regard to whether they had signed guarantees. Therefore, they did not suffer any damages that they would not have suffered if they had not signed guarantees.

In *Johnston v. The Oregon Bank, supra*, 285 Or at 427, the court said:

> "It is our conclusion that the bank does not have an obligation to plaintiff based upon his guarantee to it for the kind of damages now in issue because such damages did not flow from the breach of the guarantee agreement. The damages would have occurred to plaintiff just the same in the absence of any guarantee. The damage to plaintiff resulted from plaintiff's interest in the lumber company as well as his contractual relations with other creditors and from the lumber company's bankruptcy and inability to pay its obligations, which bankruptcy was, in turn, caused by the bank's breach of its agreement with the lumber company. Plaintiff's injury either was derivative through his interest in the lumber company or was the result of business relations with others for its benefit. It was not the result of his guarantee to the bank."

Here, with the exception of the allegations concerning emotional distress and Doyle's heart attack, the damages alleged were damages to the partnership. Additionally, the damages personal to the partners are alleged to have occurred because the business failed, not because Bank enforced the guarantees. The individual partners have not alleged damages that would not have occurred but for the existence of the guarantees. Therefore, the guarantees do not form an independent basis for claims by the individual partners.

In their reply brief, plaintiffs contend that, even without reference to their guarantees, the individual partners have stated a breach of contract claim:

> "The individual partners state a contract claim without reference to their guarantees. They allege that the promise to loan money to Caplener Brothers was made to them as individuals, as well as to Caplener Brothers. * * * They allege individual damages. * * * Their allegations of the promise, breach and damages are sufficient to state a claim."

The sixth amended complaint alleges as a part of the breach of contract "count" that Bank required a personal guarantee by Doyle, John and Michael as a condition to its promise to make the loan *to the partnership*, that Bank promised plaintiffs that it would make a loan *to the partnership* to finance the purchase of lumber and that it breached that promise by refusing to advance the funds *to the partnership* necessary to complete the transaction.[7] The damages alleged include losses to the partnership in lumber, profits, sales, opportunity to sell the transportation part of the business, opportunity to continue in the lumber business and expenses to the partnership and to Michael for the bankruptcy legal and accounting fees. Bank moved to dismiss the claims of the individual partners under ORCP 21, arguing, among other points, that there was no legal basis on which the individual partners could state a claim for damages based on their guarantees. As we have said above, we agree with the trial court's ruling that the guarantees do not provide a basis for the claims. Although individual partners may maintain or be joined as parties to an action on behalf of or against the

---

[7] The sixth amended complaint alleges, in part:

"13.

"[Bank's] actions and words constituted a promise to Caplener Brothers and to Doyle, John and Michael Caplener to loan Caplener Brothers the necessary funds to allow them to complete the purchase and sale of a large contract involving approximately Two Million Dollars ($2,000,000) worth of lumber.

"14.

"Caplener Brothers and Doyle, John and Michael Caplener fully complied with all of their responsibilities and requirements under the agreements to loan money, or their failure to perform any such responsibilities is excused because of [Bank's] breach.

"15.

"[Bank] breached the agreement to loan money by demanding that Caplener Brothers' customers provide additional security in the form of irrevocable letters of credit, and by failing to advance the necessary funds to complete the lumber purchase.

"16.

"At the time [Bank] breached the agreements, [Bank] knew or should have known that its failure to fulfill its terms of the agreement would cause substantial injury to Doyle, John and Michael Caplener and Caplener Brothers as hereinafter alleged.

"17.

"[Bank's] actions were a substantial contributing factor in causing Caplener Brothers and Doyle, John and Michael Caplener to suffer the damages set forth below[.]"

partnership, *see* ORCP 26B, we are not aware of any basis for a claim by the individual partners *on their own behalf* for breach of an alleged agreement to lend money to the partnership. The trial court did not err in dismissing the individual partners' claims of breach of contract.[8]

■ ■        The last issue, which is encompassed by plaintiffs' first assignment, is whether the court erred in holding that the partnership, now the only plaintiff with a triable claim remaining, is limited in its breach of contract claim to $451,000, the stated value of the claim disclosed in the bankruptcy proceeding.[9] The court granted Bank's motion for summary judgment against the partnership on that issue, on the basis of several concepts, including claim preclusion, judicial estoppel and waiver. Judicial estoppel is a federal concept akin to equitable estoppel, which bars a party from asserting a position that is in conflict with a position that it successfully asserted in an earlier judicial proceeding. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F2d 414, 417 (3d Cir 1988). It has been applied by federal courts to hold that a debtor who invokes the protection of the bankruptcy court and purports to disclose all of its assets, including claims that it might assert in litigation, is precluded from later asserting a claim that existed at the time of the bankruptcy but was not disclosed. *In re Louden*, 106 BR 109, 112 (Bkrtcy ED Ky 1989); *Oneida Motor Freight, Inc. v. United Jersey Bank, supra.* Courts also rely on the principles of *res judicata* and equitable estoppel in holding that a failure to disclose existing claims during the pendency of a bankruptcy proceeding bars the debtor's later assertion of the undisclosed claims. *In re Hoffman*, 99 BR 109 (Bkrtcy ND Iowa 1989).

Plaintiffs contend that the trial court erred in holding that the partnership's expanded breach of contract claim is barred by any of the described principles. They argue that the new "counts" in the second amended and subsequent complaints, including the additional breach of contract and detrimental reliance/promissory estoppel allegations, are not

---

[8] No separate argument is made with respect to the claim of detrimental reliance/promissory estoppel. Nothing in this opinion should be taken to indicate that we agree that there *can be* any such "claim" in Oregon.

[9] No argument is made concerning whether the claims in the sixth amended complaint relate back to the original amended complaint.

undisclosed "claims," but are merely newly developed theories of liability arising out of the same transaction set forth in the original "lender liability" claim alleged in the first amended complaint that was fully disclosed in the bankruptcy.

We conclude that the claims were undisclosed. Throughout the bankruptcy proceeding, the partnership represented that its claim against Bank was for breach of contract and valued the claim at $451,000, the damages consisting of loss on the liquidation of the lumber contracts and lost profit. Shortly after the bankruptcy estate was closed, the individual partners amended their pleadings in this proceeding to allege claims against Bank for nearly $12,000,000, plus punitive damages in the amount of 10% of Bank's net worth. More than $6.5 million of the alleged damages relate to the breach of contract claims, for which damages were claimed for loss on liquidation of the lumber contracts, lost profits, lost sales, lost opportunities to sell parts of the business and to continue in the lumber sales business, emotional distress, Doyle's heart attack and bankruptcy expenses.

■  The trial court determined that the record on summary judgment shows that the partnership had in its possession all of the facts necessary to assert the additional counts in September, 1987, long before the estate was closed in May, 1989. Plaintiffs do not challenge that determination. Although plaintiffs might not have discovered until after closure of the bankruptcy case that the facts had additional legal significance, that is not a basis for concluding that the partnership was not required to disclose the expanded claims. In *Matter of Howe*, 913 F2d 1138, 1147 (5th Cir 1990), the court said:

> "The Howes argue that they should be allowed to pursue their claims because, although they may have been aware of the basic facts underlying their claims, they were not aware of the significance of those facts. We find the Howes' ignorance an inadequate excuse for their failure to raise their claims in the earlier proceedings. They do not suggest that the facts forming the basis of those claims were undiscoverable until after those proceedings. Nor do they suggest that the adversary proceedings lacked the procedural mechanisms that would have allowed them to bring their claims."

We agree with the trial court that the additional "counts," including the expanded breach of contract claim, were claims that were undisclosed in the bankruptcy.

■■     We are not persuaded, however, that it is necessary for us to decide whether the concepts of judicial estoppel, *res judicata* or waiver bar the expanded breach of contract claim, because the trial court's conclusion was right for another reason. Plaintiffs contend that, if the claim was undisclosed, the debtor may pursue it, if it has been abandoned by the trustee. However, an undisclosed claim is not abandoned and, therefore, the partnership may not pursue it.

■     A trustee may abandon any property that is burdensome or that is of inconsequential value and benefit to the estate. 11 USC § 554(a). When the partnership's trustee abandoned the partnership's claims against Bank, it did so pursuant to 11 USC § 554(c):

> "Unless the court orders otherwise, *any property scheduled under section 521(1)* of this title not otherwise administered at the time of the closing a case is abandoned to the debtor and administered for purposes of section 350 of this title." (Emphasis supplied.)

Under that provision, all scheduled property was abandoned by operation of law when the estate was closed. Ordinarily, abandonment is irrevocable, even if there is a subsequent discovery that the property has a greater value than previously believed. *In Re Wornell*, 70 BR 153, 154 (Bkrtcy WD Mo 1986). If, however, information concerning a potential asset has not been properly scheduled or disclosed so as to enable the trustee to make an informed decision concerning its potential value to the estate, the abandonment is ineffective and can be revoked. *In Re Bryson*, 53 BR 3, 4 (Bkrtcy M. D. Tenn. 1985); *In re Schmid*, 54 BR 78 (Bkrtcy DC OR 1985).

Here, on the schedule showing its assets and liabilities, the partnership listed a contract claim against Bank for $451,000, damages based on losses upon liquidation of the lumber contracts and lost profits from those transactions. The trustee was also aware of Bank's judgment and claim of approximately $311,000, and may have determined, in light of it, that the contract claim against Bank was not worth pursuing. The expanded claim provided considerably more to

pursue. The second amended complaint alleged the same damages as alleged originally, plus damages for other lost sales and profits in excess of $1 million, lost opportunities to sell part of the business and to continue in the lumber sales business in excess of $5 million, and damages for emotional distress and damage to reputation in excess of $1 million. The trustee's abandonment of the contract claim under 11 USC § 554(c) constitutes an abandonment only to the extent that the trustee had knowledge of its potential value.

We conclude that the trustee did not abandon the expanded breach of contract claim, because it was not disclosed, and because the contract claim that was disclosed could not have given him notice of the expanded claim. Accordingly, the expanded claim remains property of the bankruptcy estate, not the partnership, and cannot be asserted by the partnership. As we have noted, the bankruptcy trustee has been discharged, has not asserted any claim in the pleadings and is not a party to this proceeding. We affirm the trial court's granting of summary judgment to Bank as to the expanded breach of contract claim, thereby limiting the partnership to a breach of contract claim[10] alleged in the sixth amended complaint, limited to $451,000 damages.

Affirmed.

---

[10] *See* n 8, *supra.*