Argued and submitted March 4, decision of the Court of Appeals affirmed in part and reversed in part, judgment of the circuit court affirmed in part and reversed in part, and case remanded to the circuit court for further proceedings September 2, 1993

Doyle CAPLENER,
John V. Caplener,
Thomas G. Marks, Trustee of
the bankruptcy estate of Michael L. Caplener,
and Caplener Brothers, an Oregon partnership,
*Petitioners on Review,*

*v.*

UNITED STATES NATIONAL BANK
OF OREGON,
a national banking association,
*Respondent on Review.*

(CC A8511-06801; CA A65555; SC S39422)

857 P2d 830

507-a

Michael L. Williams, Portland, argued the cause for petitioners on review. With him on the petition were Robert S. Sola, and Williams & Troutwine, P.C., Portland.

Gary Roberts, of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed responses for respondent on review.

Helen T. Dziuba, Portland, filed a brief for *amicus curiae* Oregon Trial Lawyers Association.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action by a partnership (Caplener Brothers), two of three individual partners, and the trustee of the bankruptcy estate of Michael Caplener, the third partner, against the United States National Bank (Bank) for damages allegedly caused by Bank's breach of an oral agreement to lend money to the partnership. The trial court dismissed some of plaintiffs' claims on the pleadings, entered summary judgment for Bank on others, and entered a judgment pursuant to ORCP 67B.

■■ The Court of Appeals held: (1) that the trial court erred in denying Bank's motion to dismiss plaintiffs' claims of breach of the duty of good faith and fair dealing, intentional interference with contract, intentional interference with business relations, intentional infliction of severe emotional distress, negligence, and breach of fiduciary duty, because those claims had not been brought within the two-year statute of limitations;[1] (2) that the trial court did not err in granting Bank's motion to dismiss the individual partners' claims for failure to state a claim, ORCP 21A(8);[2] and (3) that the trial court did not err in holding that the partnership, now the only plaintiff with a triable claim remaining, was limited in its breach of contract claim to $451,000, the stated value of the claim as disclosed in the bankruptcy proceeding, and in granting summary judgment for Bank on that issue.[3] *Caplener v. U.S. National Bank*, 112 Or App 401, 831 P2d 22 (1992). We allowed plaintiffs' petition for review.

Plaintiffs Doyle, John, and Michael Caplener were the general partners of Caplener Brothers, a trucking and lumber business. Before the events giving rise to this action, Caplener Brothers regularly financed its lumber purchases

---

[1] The trial court ruled that those claims relate back to the original breach of contract claim and, therefore, that they are not time-barred.

[2] In considering the sufficiency of plaintiffs' complaint, we accept all well-pleaded allegations as true and give plaintiffs the benefit of all favorable inferences that may be drawn from the facts alleged. *Stringer v. Car Data Systems, Inc.*, 314 Or 576, 584, 841 P2d 1183 (1992).

[3] We review the facts on the summary judgment in the light most favorable to plaintiff, the party against whom summary judgment was granted. *See Stephens v. Bohlman*, 314 Or 344, 346-47, 838 P2d 600 (1992) (stating principle).

through defendant Bank. The three partner-plaintiffs initiated this action in November 1985.

In their first amended complaint, plaintiffs alleged that, in December 1984, Bank agreed to lend Caplener Brothers $1.5 million for a lumber purchase and that, after Bank made an initial payment of a portion of that amount, Bank breached the agreement in March 1985 by failing to advance the remaining funds. Plaintiffs sought general damages of $444,516, consisting of losses associated with forced liquidation of lumber, lost profits, and interest.

In June 1986, Caplener Brothers filed a Chapter 11[4] petition in federal bankruptcy court, and this case was stayed. In the bankruptcy proceeding, the schedule of Caplener Brothers' liabilities showed a secured debt owed to Bank of $317,000 and listed as a contingent asset this action against Bank, which was valued at $444,516. This contingent claim value was later amended to $451,000, apparently to account for accruing interest. In order to obtain post-petition interim financing from Bank during the reorganization, Caplener Brothers stipulated in bankruptcy court that it was indebted to Bank for $317,000 and that the bank had enforceable security interests in certain collateral. No mention was made of the present case as a possible counterclaim or offset to any portion of that debt. The partnership's creditors approved a reorganization plan under Chapter 11, but a proposed sale of the business was not consummated, and the case was converted to a Chapter 7 liquidation.[5] The bankruptcy estate was closed in May 1989, resulting in discharge of the partnership's debts and in abandonment by the trustee in bankruptcy of the partnership's claim against Bank.[6] Michael

---

[4] 11 USC §§ 1101-1174 (1988).

[5] 11 USC §§ 701-766 (1988).

[6] 11 USC § 554(c) provides that:

"Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."

The Caplener Brothers' trustee submitted an affidavit stating that, should the Caplener Brothers partnership be made a party to this action, he would seek to reopen the closed bankruptcy estate in order for any recovery to be made available to the creditors of Caplener Brothers. However, after Caplener Brothers was added to the action, the trustee changed his position, submitting a second affidavit stating

Caplener also filed individually for bankruptcy under Chapter 7 and was discharged of his debts in February 1989.[7]

In May 1989, the parties stipulated to an order lifting the bankruptcy stay, and shortly thereafter the partners filed a second amended complaint in the present case, alleging additional facts and new claims. The additional facts alleged were that, after forcing plaintiffs to liquidate their lumber purchases at a substantial loss, Bank promised to cooperate with plaintiffs in working out repayment schedules on the loans made but instead required additional collateral, seized funds from plaintiffs' bank accounts, and otherwise interfered with the operation of plaintiffs' business. Plaintiffs alleged that those actions resulted in further damages, ultimately driving them into bankruptcy and causing Doyle Caplener to suffer a heart attack. The second amended complaint added claims for promissory estoppel, breach of the covenant of good faith and fair dealing, intentional interference with contract, intentional interference with business relations, and intentional infliction of severe emotional distress. Plaintiffs requested over $11 million in damages.

Plaintiffs thereafter filed a third amended complaint, repeating the allegations contained in the second amended complaint, and additionally asserting that Bank was negligent in failing to have proper procedures for management review of loan commitments, in allowing an advance of funds for the lumber purchase when the entire loan had not been approved, in over-promoting Bank's willingness to make the loans, and in allowing one of its agents to threaten plaintiffs with retaliation for filing the present action. The third amended complaint also added a claim for breach of fiduciary duty, alleging that Bank discouraged plaintiffs from working with other banks, encouraged plaintiffs to expand

---

that, before attempting to reopen the case, he consulted with his lawyers, who advised him that the lender liability claim had been abandoned at the close of the bankruptcy case and that full ownership of that claim had passed back to the Caplener Brothers partnership.

[7] The trustee of the bankruptcy estate of Michael Caplener (the same individual who acted as trustee for the Caplener Brothers' estate) was substituted for Michael Caplener as a party to this action. *Caplener v. U.S. National Bank*, 112 Or App 401, 403-04 n 1, 831 P2d 22 (1992).

their lumber business, and scared away a potential purchaser of the partnership's trucking division.

Bank moved to dismiss the tort claims,[8] arguing that they did not relate back to the original complaint under ORCP 23C and were barred by the pertinent statute of limitations. The trial court denied Bank's motion but granted, on other ground (failure to state claims), Bank's motion to dismiss the claims for interference with contract, interference with business relations, and intentional infliction of severe emotional distress. ORCP 21A(8).

Plaintiffs' fourth amended complaint realleged the tort claims, and Bank moved for summary judgment, arguing that plaintiffs should be estopped from asserting claims against Bank in excess of the amount disclosed in bankruptcy. The trial court granted Bank's motion, limiting the claims to $451,000, but indicated that that ruling did not apply to the individual partners who had not been in bankruptcy.

Bank then moved to substitute the partnership, Caplener Brothers, as the real party in interest. The trial court substituted the partnership as plaintiff but allowed the individual plaintiffs to maintain claims against Bank to the extent that they suffered damages personally.

Plaintiffs' fifth amended complaint alleged breach of contract, promissory estoppel, and negligence.[9] The court allowed Bank's motion to dismiss the negligence claim for failure to state a claim, but denied Bank's motion to dismiss the promissory estoppel claim, ruling that plaintiffs could plead that count as an alternative to the contract claim.

Plaintiffs' sixth amended complaint alleged breach of contract and promissory estoppel and sought over $7 million in damages, all of which represented damages to the individuals, except for the $451,000 alleged as damages to the

---

[8] The tort claims were breach of the duty of good faith and fair dealing, intentional interference with contract, intentional interference with business relations, intentional infliction of severe emotional distress, negligence, and breach of fiduciary duty.

[9] The contract and promissory estoppel claims were brought only by the partnership. The negligence claim was brought by the partnership and by the individual partners.

partnership. The sixth amended complaint added a new factual allegation, that in September 1984 Bank had required individual guarantees from each of the partners and that the individuals therefore suffered personal damages from the breach of the loan agreement.

Bank then moved for summary judgment or, alternatively, for dismissal, on the claims by the individual partners, arguing that they suffered no losses separate and apart from the loss of the partnership. The trial court granted Bank's motion to dismiss the individual partners from the action and denied plaintiffs an opportunity to amend their pleadings further.

The court then entered a judgment pursuant to ORCP 67B,[10] specifying: based on the fourth amended complaint, that Caplener Brothers partnership was a real party in interest and that Bank have judgment against Caplener Brothers on all claims except the contract and promissory estoppel claims; based on the fifth amended complaint, that plaintiffs' negligence claim was dismissed; based on the sixth amended complaint, that the claims of the individual plaintiffs were dismissed. Those actions by the court left only the breach of contract and promissory estoppel claims of the partnership to be litigated.

Plaintiffs then appealed to the Court of Appeals, arguing that the trial court erred in granting summary judgment to Bank on all counts except for those in the original complaint (breach of contract) and in limiting damages to $451,000; in allowing Bank's motion to dismiss the individual and trustee breach of contract claims; in allowing Bank's motion to dismiss the individual negligence count; and in allowing Bank's motion to strike the allegations of damages for Doyle Caplener's heart attack.

Bank cross-appealed on the trial court's denial of its motion to dismiss the tort claims in plaintiffs' third amended

---

[10] ORCP 67B provides that, when fewer than all claims are disposed of,

"the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

complaint, arguing that those claims did not relate back to the original filing.

The Court of Appeals chose to consider Bank's cross-appeal first, holding that none of the tort claims related back to the original pleadings and, therefore, that all of plaintiffs' tort claims were barred by the statute of limitations. *Caplener v. U.S. National Bank, supra,* 112 Or App at 408-11. The Court of Appeals then considered the issue whether the individual partners had stated claims based on their status as individual guarantors of the loan in question and held that they did not, citing *Johnston v. The Oregon Bank,* 285 Or 423, 591 P2d 746 (1979). *Caplener v. U.S. National Bank, supra,* 112 Or App at 413. On the issue whether the partnership's recovery was limited to the amount stated in the bankruptcy proceeding, the Court of Appeals concluded that, because the trustee in bankruptcy had abandoned only a $451,000 claim, any amount over $451,000 remained the property of the bankruptcy estate. The Court of Appeals therefore held that the claim was limited to $451,000. *Id.* at 417-18. Accordingly, the Court of Appeals affirmed the trial court's pretrial rulings. *Id.*

Plaintiffs petitioned for review in this court, arguing that the Court of Appeals erred in holding (1) that the individual partners had not stated claims; (2) that the bankruptcy trustee had not abandoned the entire claim; and (3) that the tort claims did not relate back to the original complaint under ORCP 23C.

Bank responds that the Court of Appeals correctly decided each of those issues. Bank also argues in the alternative that, if the Court of Appeals' rationale for limiting the amount of the claim to $451,000 was incorrect, its decision nonetheless should be affirmed based on the trial court's reasoning that plaintiffs should be judicially estopped from claiming more than the amount disclosed in bankruptcy.

## THE INDIVIDUAL PARTNERS' CONTRACT CLAIMS

The parties agree that this court's decision in *Johnston v. The Oregon Bank, supra,* is on point as to whether the individual partners stated contract claims against Bank. Plaintiffs argue in particular that the Court of Appeals'

resolution of the case at hand is irreconcilable with its earlier view of the *Johnston* case as expressed in *Van Petten v. The Oregon Bank*, 42 Or App 367, 600 P2d 507, *rev den* 288 Or 173 (1979).

In *Johnston*, the plaintiff, an individual, was the principal shareholder in a corporation. The corporation, in turn, was a general partner of the Van Petten Lumber Company, a partnership.[11] The plaintiff guaranteed a loan made by the defendant bank to the partnership and later claimed that the defendant's disposal of certain loan collateral in a commercially unreasonable manner effected a release from the guaranty. *Johnston v. The Oregon Bank, supra*, 285 Or at 425.

In *Johnston*, as in the present case, one of the claims for damages was that the defendant bank's actions drove the partnership into bankruptcy. The plaintiff claimed damages based on injury to his credit and business standing, destroyed value of his interest in the partnership, lost wages that he would have drawn from the partnership, legal expenses, and liability on guaranties made to other creditors of the partnership. *Id.* at 426. This court held that the bank did not have an obligation to the plaintiff, stating:

> "The damages would have occurred to plaintiff just the same in the absence of any guaranty. The damage to plaintiff resulted from plaintiff's interest in the lumber company as well as his contractual relations with other creditors and from the lumber company's bankruptcy and inability to pay its obligations, which bankruptcy was, in turn, caused by the bank's breach of its agreement with the lumber company. Plaintiff's injury either was derivative through his interest in the lumber company or was the result of business relations with others for the lumber company's benefit. It was not the result of his guaranty to the bank." *Id.* at 427.

The *Johnston* court, however, also indicated its approval of the statement that "a guaranty of a loan to a corporation *can be* the basis for a personal cause of action against the lender," but only "under circumstances different

---

[11] The same Van Petten Lumber Company transaction was at issue in *Van Petten v. The Oregon Bank*, 42 Or App 367, 600 P2d 507, *rev den* 288 Or 173 (1979). In that case, the issue was whether the corporation that was a general partner in a partnership had stated a claim against the bank. Under the facts of that case, the Court of Appeals held that the corporation had stated a claim. *Id.* at 373.

from the present case." *Id.* at 428 n 1. Relying on that footnote, the Court of Appeals in *Van Petten* concluded that the plaintiff corporation that guaranteed a loan to the partnership did state a claim against the bank under the particular facts of that case. *Van Petten v. The Oregon Bank, supra,* 42 Or App at 372-73.

In this case, plaintiffs argue that the individual partners are more akin to the corporation in *Van Petten* than to the shareholder in *Johnston* and that they have stated contract claims. We do not find it necessary to determine whether *Van Petten* was correctly decided in order to resolve the present case. From the above-quoted passage in *Johnston*, it is apparent that the key issue is not whether the claim is by a corporation, a shareholder, or a partner, but whether the claimed damages were derivative of, rather than distinct from, a breach of the agreement with the borrowing corporation or partnership. *See Weiss v. Northwest Accept. Corp.*, 274 Or 343, 350, 546 P2d 1065 (1976) (shareholder who guaranteed loan stated no claim against the defendant corporation where injury suffered by shareholder was the same as that suffered by other creditors of the corporation).

As noted, the trial court gave plaintiffs an opportunity to plead damages independent from the damages to the partnership, but later granted Bank's ORCP 21A(8) motion to dismiss the claims of the individuals, holding:

> "Plaintiff alleges U.S. Bank breached [the loan agreement] and caused the partnership to become bankrupt which, as usually happens, also adversely affected the general partners individually.
>
> "* * * The Court finds the individual Plaintiffs' damages are derivative of the damages to the partnership * * *."

We agree with the trial court's conclusion that the damages alleged by the individuals are derivative of the damages to the partnership. Those damages were the result of plaintiffs' interest in the partnership.

■ According to the ORCP 67B judgment, the effect of the trial court's ruling was to substitute the partnership for the individual plaintiffs as the "real party in interest" in the contract claims from the fourth amended complaint. The partnership is the real party in interest in this case and no

individual partner has any separate legally cognizable interest. Therefore, the viability of the contract claims is unaffected, because they were asserted only by the partnership in the fifth amended complaint. Consequently, the next issue to be considered is whether the damages asserted by the partnership should be limited to $451,000.

## JUDICIAL ESTOPPEL

■    The trial court granted summary judgment to Bank on the limitation of damages issue, relying on a concept that, in a number of cases, has been termed "judicial estoppel."[12] *See, e.g., Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F2d 414 (3d Cir) (judicial estoppel precludes a party from assuming a position in a legal proceeding inconsistent with the position previously asserted in bankruptcy), *cert den* 488 US 967 (1988).

The trial court found that, during Caplener Brothers' bankruptcy proceeding, all facts relevant to the claims were known to the parties and that plaintiffs had several opportunities to amend the complaint during the course of the bankruptcy proceeding. The trial court held:

> "[T]he point is what the Plaintiffs disclosed to a Bankruptcy Court whose primary purpose is the protection of creditors and the orderly discharge of a debtor based upon what a debtor discloses as his asset and liability base and his statement that there is no real hope of rehabilitation which, when discharge is granted, frees the debtor from all unpaid or discharged claims. Once again, the reason for the bar is not so much to protect Defendant, but to preserve the integrity of the bankruptcy proceeding which is designed to protect other creditors as well as Defendant.
>
> "* * * To hold otherwise would go against the very great weight of case law and would allow Plaintiff to have its cake and eat it too by clearing away their debts and letting them keep all net proceeds from a successful subsequent litigation based on an enlarged prayer and additional claims from the same act. This is precisely what the cases and the law seek to prohibit."

---

[12] For the sake of simplicity, we will refer to this general concept as "judicial estoppel," although other relevant cases use the terms "equitable estoppel," "*res judicata*," "waiver," or "quasi-estoppel" to justify similar holdings.

■ We first consider when, if ever, the concept of judicial estoppel may be invoked to limit the state law claims of a plaintiff who has failed to disclose all assets in a bankruptcy proceeding. When a bankruptcy case is closed, property disclosed during the bankruptcy proceeding but not administered by the bankruptcy trustee is deemed abandoned by the trustee and is returned to the debtor.[13] In the present case, the trustee has made it clear that he abandoned the claim against Bank to the debtor and has no intention of reopening the bankruptcy estate to disburse any proceeds from this action to creditors of the partnership. *See* note 6, *supra*. We must decide, therefore, whether Caplener Brothers should be estopped from claiming more in state court than was disclosed in bankruptcy, in a context in which the bankrupt estate will not be reopened by the trustee to distribute any proceeds of this claim to Caplener Brothers' creditors.[14]

The present case is similar to cases in which a state court claim has been precluded due to a debtor's failure to disclose it during bankruptcy. The leading case of this variety is *Oneida Motor Freight, Inc. v. United Jersey Bank, supra*, 848 F2d at 416, in which a plaintiff, formerly a Chapter 11 debtor, brought a state court action[15] in contract and tort against a creditor, asserting that the bank's improper actions drove the plaintiff into bankruptcy. The district court dismissed the complaint for failure to state a claim, because the

---

[13] *See* 11 USC § 554(c), quoted *supra* note 6.

[14] This situation differs from many of the bankruptcy court cases cited by the parties, in which a trustee or creditor seeks to revoke an abandonment after a debtor receives proceeds from an asset. *See, e.g., In re Killebrew*, 101 BR 471 (Bkrtcy SD Miss 1988) (abandonment revocable where debtor provides misinformation as to value of asset); *In re Schmid*, 54 BR 78 (Bkrtcy D Or 1985) (abandonment based on mistake is revocable); *In re Bryson*, 53 BR 3 (Bkrtcy MD Tenn 1985) (abandonment deemed final where trustee had examined debtors concerning action and determined that it had no value to estate). In the present case, the trustee does not intend to revoke his abandonment, and we have no information with respect to the position of any creditors.

The present case also differs from a number of reported cases barring state law lender liability claims on *res judicata* grounds because the debtor failed to assert the claims as part of the "core" bankruptcy proceedings. *See, e.g., Matter of Baudoin*, 981 F2d 736 (5th Cir 1993); *Sure-Snap Corp. v. State Street Bank & Trust Co.*, 948 F2d 869 (2d Cir 1991). Bank has not contended that plaintiffs' claims should be barred because plaintiffs failed to litigate them as a counterclaim in the bankruptcy proceeding.

[15] *Oneida* was removed by the defendant to federal district court.

claim had not been brought to the attention of the bankruptcy court. The Third Circuit affirmed, because the plaintiff had acknowledged its debt to the bank during the Chapter 11 proceedings without any mention of a set-off, and knowledge of the claim could have affected the bank's position on the reorganization plan. *Id.* at 417-19. The court noted that judicial estoppel

> "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted. Judicial estoppel looks to the connection between the litigant and the judicial system while equitable estoppel focuses on the relationship between the parties." *Id.* at 419 (citations omitted).

The court applied judicial estoppel, agreeing that the state law claim "speaks to a position clearly contrary to [the plaintiff's] Chapter 11 treatment of the bank's claim as undisputed." *Id.*; *see also County Fuel, Inc. v. Equitable Bank Corp.*, 832 F2d 290 (4th Cir 1987) (the plaintiff waived state law claim by failing to bring bankruptcy counterclaim); *In re Louden*, 106 BR 109 (ED Ky 1989) (the plaintiffs were judicially estopped from bringing a claim where it was not disclosed as an asset in bankruptcy); *In re Hoffman*, 99 BR 929 (ND Iowa 1989) (dismissing subsequent state law claims not disclosed in bankruptcy); *In re Galerie Des Monnaies of Geneva Ltd.*, 62 BR 224 (SDNY 1986) (subsequent state law claims barred by judicial estoppel).

The case at hand has a number of similarities to *Oneida*. First, as in *Oneida*, the state law claims are based on the same alleged conduct that brought plaintiffs into bankruptcy court. Second, plaintiffs at no time disputed in bankruptcy court Bank's claim of $317,000, and even stipulated to the validity of that claim, despite the fact that a portion of that debt was related to the very transaction that is at issue in the present case. Third, Bank asserts, and plaintiffs do not dispute, that, had Bank known of a claim in excess of $11 million against it, it would not have been willing to proceed with the interim financing of Caplener Brothers during the Chapter 11 reorganization effort.

On the other hand, there are differences between *Oneida* and the present case. In *Oneida*, the plaintiff debtor did not disclose any claim against the bank in bankruptcy

court, then brought the state law claim after reorganization. Here, the state law claim was brought before plaintiffs went to bankruptcy court, and the claim, ultimately valued at $451,000, was disclosed to the bankruptcy court. Bank, as well as the bankruptcy court, had knowledge of the present action. The issue is whether the disclosure of an action seeking $451,000 in damages is sufficient to put Bank (as well as other creditors, the bankruptcy trustee, and the bankruptcy court) on notice of a potential claim of over $11 million based on the same underlying facts. In order to determine this issue, we must look carefully at exactly what was disclosed in bankruptcy court, as well as what disclosure was required under bankruptcy law.[16]

Section 521 of the Bankruptcy Code requires debtors to "file a * * * schedule of assets and liabilities, a schedule of current income and current expenditures, and a statement of the debtor's financial affairs." 11 USC § 521(1) (1988). Debtors reorganizing under Chapter 11 are required to submit a disclosure statement containing "adequate information" before a debtor may ask for creditors' approval of the reorganization plan. 11 USC § 1125 (1988). Section 1125 (a)(1) provides the following definition:

> " '[A]dequate information' means information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan * * *."

*See also In re Malek*, 35 BR 443, 444 (Bkrtcy ED Mich 1983) ("all pending or contemplated litigation of whatever nature must be described fully, completely and in detail").

Caplener Brothers' initial filing in bankruptcy court, seeking Chapter 11 reorganization, listed Bank as a secured creditor owed approximately $317,000, and the portion of the form instructing the debtor to "indicate if claim is contingent, unliquidated or disputed" was left blank. The claim against Bank, however, was listed as an asset under "contingent and

---

[16] The file of the bankruptcy court case is not a part of the record on appeal. Certain portions of the bankruptcy court record, however, have been made part of the record in this case, as appendices to the various pretrial motions.

unliquidated claims" and valued at $444,516.[17] In response to the question: "Were you a party to any suit pending at the time of the filing of the original petition herein? (If so, give the name and location of the court and the title and nature of the proceeding.)," Caplener Brothers listed the name of the present case, the court, and the case number.

The Caplener Brothers' amended disclosure statement accompanying its reorganization plan specifically "excluded the litigation pending between U.S.N.B and Doyle Caplener from the assets of the Partnership estate, because it is speculative and all creditors will be paid in full without use of its potential proceeds." The record shows that Bank was one of the creditors approving the reorganization plan. Also on record are the bankruptcy court's stipulated orders authorizing post-petition financing of Caplener Brothers by Bank. As noted above, Bank would not have consented to provide that interim financing had it been aware of a claim in excess of $11 million against it.

Was Caplener Brothers' failure to dispute Bank's claim, and its stipulation to the validity of Bank's claim in order to obtain post-petition financing, as well as its disclosure of only a $451,000 claim against Bank, fundamentally at odds with its current position that it may maintain a claim for over $11 million? We believe that those positions were inconsistent and that, under the circumstances, plaintiffs are judicially estopped.[18]

■ Although Caplener Brothers is judicially estopped from asserting damages in excess of $451,000 because of its under-disclosure of these damages in the bankruptcy proceedings, we do not find any reason to conclude that the types

---

[17] As previously stated, this figure was amended later to $451,000.

[18] Other state courts have reached the same conclusion on similar facts. *See, e.g., Wright v. State*, 824 P2d 718 (Alaska 1992) (where the debtor successfully discharged the bulk of his debts in bankruptcy and his creditors would be unable to recover from him, should he recover against the defendant on lender liability claims, debtor is estopped from asserting inconsistent position in later state court proceeding); *Cleasby v. Security Federal Sav. Bank*, 243 Mont 306, 794 P2d 697 (1990) (where the plaintiffs underdisclosed tort claims against lender in bankruptcy court and lender stipulated to a reorganization plan, the plaintiffs were estopped from bringing the later action); *but see Robinson v. McGinn*, 195 Cal App 3d 66, 240 Cal Rptr 423 (1987) (court concluded, without analysis, that the plaintiff's state court malpractice claim was not limited to the value placed on it during bankruptcy).

of claims or theories of liability also should be limited based on the judicial estoppel doctrine. The trial court incorrectly decided, based on the judicial estoppel doctrine, to limit Caplener Brothers' types of claims as well as the amount of the claims. Because, however, we may affirm for other reasons a trial court's ruling that was correct, *Bush v. Greyhound Lines, Inc.*, 295 Or 619, 623, 669 P2d 324 (1983), we turn to the issue whether this result nonetheless was correct because the additional claims should not have been deemed to relate back to the original complaint.

## RELATION BACK OF AMENDMENTS

On cross-appeal in the Court of Appeals, Bank argued that the trial court erred in failing to grant its motion to dismiss the tort claims as time-barred, because they did not relate back to the original complaint. ORCP 23C provides in part:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Plaintiffs argue that the tort claims involve the same "conduct, transaction, or occurrence" as the original contract claims and are not barred under that rule.

This court has made the following statement regarding the relation-back doctrine under ORCP 23C:

> "The apparent rationale for allowing a post-limitation amendment to relate back to the pre-limitation pleading, and thereby defeat the statute of limitations, is that a party who is notified of litigation concerning certain conduct * * * or a given transaction or occurrence through the original complaint, has been given the notice that the statute of limitations was intended to assure." *Welch v. Bancorp Management Services*, 296 Or 208, 221, 675 P2d 172 (1983) (citations omitted), *modified* 296 Or 713 (1984).

In *Welch v. Bancorp Management Services, supra*, this court held that an amendment related back, because it

> "alleged other conduct interfering with the same contract substantially at the same time, albeit interference with the

other party to the contract. Thus, the claimed misrepresentation to plaintiff unites with the originally pleaded misrepresentation to the Trust to cause the single injury alleged in the original complaint. We conclude that the additional misrepresentation arose out of the same transaction pleaded in the original complaint and relates back." *Id.* at 222.

In the present case, plaintiffs argue that, because the new claims arose out of the same conduct alleged in the original pleading, the addition of tort theories is analogous to the addition of the misrepresentation claim in *Welch*. We do not find *Welch* to be analogous, however. In *Welch*, only an additional misrepresentation claim was added where the defendant already was on notice of a misrepresentation claim, the conduct occurred at about the same time, and it resulted in a single injury.

We turn now to each of the tort claims set forth in the third amended complaint, to determine whether they "arose out of the conduct, transaction, or occurrence" originally pleaded and, if so, whether the original pleading sufficiently apprised Bank of litigation concerning such conduct, transactions, or occurrences so as to serve as "the notice that the statute of limitations was intended to assure." *Id.* at 221.

The first tort claim added by plaintiffs alleged that Bank breached its duty of good faith and fair dealing by requiring plaintiffs' customers to provide additional security, by seizing funds from plaintiffs' accounts, by refusing to give plaintiffs the chance to obtain alternative financing, by preventing plaintiffs from selling their trucking division, and by forcing plaintiffs to liquidate assets. Those events relate to dealings between the parties *after* the loan was denied. Although plaintiffs assert that the later events "arose out of" the denial of the loan, it is more accurate to say that Bank's alleged later actions "arose out of" Bank's efforts to keep secured the debt that plaintiffs admittedly owed to Bank. Therefore, the claim for breach of duty of good faith and fair dealing does not relate back.

■ Plaintiffs' next tort claim alleged intentional interference with contract, claiming that Bank interfered with a contract for the sale of lumber by requiring the customer to provide additional security. It is neither alleged, nor can it reasonably be inferred, that those allegations refer to the

underlying transaction for which the loan at issue in the original complaint was to be made. For the reasons stated above, that claim does not relate back.

■ Plaintiffs next alleged intentional interference with business relations, based on events beginning in March 1985 and continuing until plaintiffs' assets were liquidated. Those allegations involve over-collateralization, but clearly involve dealings *after* the denial of the original loan. Those allegations also refer to Bank's actions in scaring away a potential buyer of the trucking component of the partnership. Clearly, that event occurred *after* the original denial of the loan; that event allegedly precipitated the conversion of the Chapter 11 reorganization into a Chapter 7 liquidation. Those factual allegations did not arise out of the same conduct, transaction, or occurrence as pleaded in the original complaint and, therefore, that the claim based on those allegations does not relate back to the original complaint.

■ ■ The next tort claim is for intentional infliction of severe emotional distress. The facts alleged involve the original denial of the loan, the attempted over-collateralization, threats of default and liquidation made to plaintiffs' customers and the prospective buyer of the trucking business, and threats to plaintiffs. It is clear that the alleged threats occurred *after* the original denial of the loan and, therefore, that the claim based on those facts does not relate back. The remaining allegations are insufficient to establish a right to recover damages for intentional infliction of severe emotional distress. *See Lewis v. Oregon Beauty Supply Co.*, 302 Or 616, 626, 733 P2d 430 (2987) (stating elements). Therefore, the trial court did not err in dismissing this claim.

■ ■ Plaintiffs' next tort claim alleges that Bank was negligent in allowing its agents to make the oral commitment to plaintiffs without review by higher management, in allowing the agents to advance the initial portion of the loan, and in allowing its agents to over-promote Bank's willingness to make the loan. All of those events appear to have occurred at the time of, and directly involve, the denial of the loan at issue in the original pleading. Because it involved essentially the same conduct as alleged for the "promise" and "breach" elements of the contract claim, the negligence claim, as based on those factual allegations, relates back to the original

complaint. Plaintiffs, however, also make additional allegations involving attempts by Bank in June 1985 to require over-collateralization and to force plaintiffs to liquidate their assets. Because these additional allegations involve a different time period and appear to arise out of subsequent dealings between the parties, rather than the denial of the loan, a negligence claim based on those allegations does not relate back.

■ Plaintiffs' final tort claim alleges breach of fiduciary duty. Some of the factual allegations involve conduct before the events involved in the original pleading: that, in 1983, Bank began discouraging plaintiffs from banking with other institutions, gave plaintiffs advice on expansion of their business, and encouraged plaintiffs in various ways to expand their business. A claim based on those factual allegations does relate to the original complaint, because although the alleged events occurred before the events involved in the original pleading, the facts pertain to the allegation in the original complaint that a fiduciary relationship and duty existed, and the allegations relate to the ultimate contention that Bank breached its fiduciary duty by denying a promised loan. On the other hand, some of the factual allegations involve conduct *after* the events involved in the original pleading, and a claim of breach of fiduciary duty based on those allegations is time-barred. To the extent described, plaintiffs' claim of breach of fiduciary duty pertaining to the loan promises and loan denial at issue in the original pleading does relate back. We express no opinion as to whether those surviving factual allegations suffice to state tort claims.[19]

In summary, we conclude that the individual plaintiffs did not suffer damages separate from those of the partnership and, therefore, that they have not stated individual claims against Bank; the partnership Caplener Brothers is the proper party to this action; and, because of its under-disclosure of this claim in the bankruptcy proceeding, Caplener Brothers is judicially estopped from asserting damages in excess of $451,000. We conclude further that Caplener

---

[19] This tort claim is denominated "COUNT TEN: Breach of Fiduciary Duty." We need not decide whether this claim is only another way of alleging a negligence claim. *See Georgetown Realty v. The Home Ins. Co.*, 313 Or 97, 110 n 7, 831 P2d 7 (1992) (discussing relationship of "breach of fiduciary duty" and negligence claims).

Brothers was not estopped from adding new theories of liability in tort, but only to the extent that the factual allegations relating to those new claims arose out of the same conduct, transaction, or occurrence alleged in the original pleading.

The decision of the Court of Appeals is affirmed in part and reversed in part. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings consistent with this opinion.