Argued and submitted September 5, 1985, affirmed December 17, 1986, reconsideration denied March 13, petition for review denied April 21, 1987 (303 Or 331)

EVANS et al,
*Appellants,*

*v.*

SALEM HOSPITAL et al,
*Respondents.*

(128,778; CA A33327)

730 P2d 562

D. Wesley Hamilton, Salem, argued the cause and filed the briefs for appellants.

Keith J. Bauer, Salem, argued the cause for respondent Salem Hospital. With him on the brief were Billy M. Sime and Parks & Bauer, Salem.

J.P. Toby Graff, Portland, argued the cause for respondent Gordon K. Peterson, M.D. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

RICHARDSON, P. J.

Newman, J., concurring in part; dissenting in part.

## RICHARDSON, P. J.

Plaintiffs Barbara Evans and Roger Evans appeal from a judgment dismissing their claims for infliction of emotional distress. The court dismissed "on the ground that it appears on the face of the complaint that the action * * * was not commenced within the time provided by statute." ORS 12.110(1). The issue is whether plaintiffs' emotional distress claims, which were added by a second amended complaint more than two years after the alleged acts occurred, "relate back" to earlier complaints which were filed within the limitation period. ORCP 23C. We hold that they do not and affirm.

On September 3, 1981, Roger Evans, as personal representative of the estate of Keith Evans, brought a wrongful death action against the defendant hospital. He amended his complaint two months later and alleged, as pertinent:

"II

"That on or about December 5, 1980, Keith D. Evans died * * *.

"III

"The plaintiff is the duly appointed Personal Representative of decedent's estate, and is acting for the benefit of the decedent's wife and child.

"* * * * *

"V

"That Defendant had knowledge of decedent's throat condition and ingestion difficulties * * *.

"* * * * *

"VII

"On said date Defendant administered fluids to decedent for the purpose of conducting certain prescribed tests, after which decedent aspirated and suffered respiratory failure.

"VIII

"That on or about December 5, 1980, the Defendant, Salem Hospital, was negligent in the following particulars:

"1) Failing to properly and reasonably attend to the decedent in that, decedent was not observed for substantial periods of time following ingestion of fluids and/or testing materials;

"2) Failing to provide life support equipment available on the premises and near enough to decedent to afford emergency use; and

"3) Failing to administer or make any substantial effort to administer any life support procedure prior to decedent's demise.

## "IX

"As a direct and proximate result of said negligent acts and omissions by the Defendant the decedent died.

"* * * * *

## "XI

"That as a direct and proximate result of Defendant's negligence, the heirs have been deprived of the decedent's future earnings, society, companionship and services, all to their general damage in the sum of One Million Dollars, ($1,000,000.00)."

On March 25, 1983, the second amended complaint was filed. It joined Dr. Peterson as a defendant in the wrongful death claim and added claims against both Peterson and the hospital by Barbara Evans, decedent's wife, and Roger Evans, his son, in their individual capacities, for "outrageous conduct" in the form of intentional or reckless infliction of emotional distress. In support of their added claims, plaintiffs alleged that Peterson was decedent's attending physician, that he had diagnosed decedent's illness as terminal cancer and recommended that he be admitted to the hospital for tests and evaluations and that, after decedent was admitted to the hospital, had been administered fluids and began to aspirate, Peterson telephoned plaintiffs and told them that he was not going to try to revive decedent. Plaintiffs arrived at decedent's room and found him unattended:

"[He] was lying flat, a sheet was chest high, eyes were open and tear filled, skin was warm and sweaty, mouth was open with his tongue down his throat; Respiration and/or heartbeat was uncertain."

Plaintiffs further alleged that, although neither they nor decedent had authorized defendants to withhold life sustaining procedures, no treatment was administered, that defendants' conduct was "extreme and outrageous beyond all bounds of decency, atrocious, wilful, wanton, malicious, oppressive, and utterly intolerable in a civilized community,"

that "in doing the things alleged said defendants knew * * * that severe emotional distress was certain or substantially certain to result to plaintiff[s]" and that "as a proximate result * * * plaintiffs * * * suffered severe emotional distress and mental shock * * *." They sought punitive damages as well as general damages to compensate them for their emotional distress.

Both defendants moved to dismiss plaintiffs' emotional distress claims, asserting that the two-year Statute of Limitations, ORS 12.110(1), had run before the filing of the second amended complaint.[1] ORCP 21. In response, plaintiffs argued that, although the claims were not filed within the two-year period, they related back to the filing of the original complaint and were therefore timely. The court granted defendants' motions. It found "no just reason to delay" and entered final judgment on the infliction of emotional distress claims. ORCP 67B. Plaintiffs appeal.

ORCP 23C governs the relation back of amended pleadings. It provides:

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment."

Peterson was not named as a defendant before the two-year statute ran. Accordingly, plaintiffs' claim against him relates back to the filing of the original complaint only if (1) the claim arose out of the "conduct, transaction, or

---

[1] The Statute of Limitations for wrongful death is three years. ORS 30.020(1). The second amended complaint was filed within three years of decedent's death, and Peterson does not contend that he was improperly joined as a defendant in the wrongful death action. Plaintiffs' subsequent amendments to their complaint are not relevant to our decision.

occurrence" set forth in the original complaint, (2) he received notice of the institution of the action and would not be prejudiced and (3) he knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. ORCP 23C; *Waybrant v. Clackamas County,* 54 Or App 740, 743, 635 P2d 1365 (1981).

■    Peterson agrees with plaintiffs that the first requirement was met[2] but argues that the other two were not. We need not decide whether the second requirement was met, because the third was not. Plaintiffs do not argue that they were ever mistaken as to Peterson's role in the events surrounding decedent's death; neither do they point to any other "mistake" that prevented them from sooner asserting their claim against him. Although "mistake" as used in ORCP 23C is not limited to cases of misnomer, *Waybrant v. Clackamas County, supra,* 54 Or App at 745, plaintiffs' failure to point to any mistake to explain their tardiness precludes their use of ORCP 23C to have their claim against Peterson relate back to the filing of the original or first amended complaint. *Bradford v. Dean Distributing Co.,* 73 Or App 141, 698 P2d 489 (1985). The court correctly granted Peterson's motion to dismiss plaintiffs' claims against him for infliction of emotional distress.

Unlike Peterson, the hospital was named as a defendant in the complaints filed within the limitation period. Plaintiffs argue, therefore, that the broad language of the first sentence of ORCP 23C applies, unrestricted by the second sentence, and, because their emotional distress claims arose out of the same "conduct, transaction, or occurrence" as the wrongful death claim asserted in the earlier complaints, they should relate back.

The rationale for the relation back doctrine under ORCP 23C, as it applies to previously named defendants, was articulated in *Welch v. Bancorp Management Services,* 296 Or 208, 675 P2d 172 (1983):

"The apparent rationale for allowing a post-limitation amendment to relate back to the pre-limitation pleading, and

---

[2] It is important to note at this point that the hospital does not share Peterson's and plaintiffs' view.

thereby defeat the statute of limitations, is that a party who is notified of litigation concerning certain conduct or a given transaction or occurrence through the original complaint, has been given the notice that the statute of limitations was intended to assure." 296 Or at 221. (Citations omitted.)

The court concluded that a post-limitation complaint alleging that the defendants interfered with a contract by making misrepresentations to the plaintiff related back to an earlier complaint in which the plaintiff had alleged that the defendants' misrepresentations to the other contracting party (the trust) interfered with the same contract. It explained:

"In plaintiff's first claim for relief, he alleged conduct interfering with his contract with the Trust. In his second claim for relief or count, plaintiff alleged other conduct interfering with the same contract substantially at the same time, albeit interference with the other party to the contract. Thus, the claimed misrepresentation to plaintiff unites with the originally pleaded misrepresentation to the Trust to cause the single injury alleged in the original complaint. We conclude that the additional misrepresentation arose out of the same transaction pleaded in the original complaint and relates back." 296 Or at 222.

Our subsequent opinions in *Parker v. May,* 70 Or App 715, 690 P2d 1125 (1984), *rev den* 299 Or 31 (1985), and *Sizemore v. Swift,* 79 Or App 352, 719 P2d 500 (1986), make clear that there can be relation back under ORCP 23C when, as here, the new complaint substitutes or adds new plaintiffs. Indeed, the tests that determine whether the later claim relates back do not differ when a new plaintiff is involved, although it may be more likely in the abstract that a new plaintiff's claim will be more remote from the events alleged in the earlier complaint than a previously named plaintiff's and correspondingly less likely to satisfy the tests. We summarized the nature of the inquiry in *Sizemore:*

"The focus of ORCP 23C is not on whether the amended pleading asserts the same claim as did the previous pleading, but on whether there was 'notice to a party by the original pleading that the conduct described therein is claimed to have given rise to a claim * * *.' [Citing *Parker v. May, supra,* 70 Or App at 719]." 79 Or App at 356.

In *Parker,* the only material difference between the earlier and later pleadings was that the former named the

accident victim's father rather than the victim as the plaintiff, and the latter corrected that mistake. The earlier pleading in *Sizemore* alleged that the defendant attorneys were negligent in failing to draft a will to carry out the testator Leonard's intent to give a devise to the plaintiff Craig, Leonard's grandson; the subsequent pleading substituted the personal representative of the intestate estate of Craig's late father (Joseph) as the plaintiff in the place of Craig and alleged that the attorneys' negligence inhered in their failing to provide in the will that the corpus of a spendthrift trust for Joseph's benefit should pass to Joseph's estate on his death.

We held that relation back was permissible in both instances. We explained in *Parker:*

"The conduct or occurrence described in the amended pleadings was identical to that set out in the original complaint, except that the caption correctly named Steven Parker as plaintiff instead of Alfred Parker. The original complaint correctly described the location, time, date and circumstances of the accident, with the exception of the proper party. ORCP 23A authorizes the court to grant amendments liberally when justice so requires.

"It is clear that the events described in the original complaint gave notice to defendants that those events were alleged to be the basis of a claim. With the focus under ORCP 23C on giving a defendant notice that his conduct has given rise to a claim and on permitting amendments to relate back when such notice has been given, we believe a trial court has discretion to allow an amendment with respect to the party plaintiff under the facts of this case. Defendants were, in fact, aware of the mistake and the identity of the proper party from the time the original complaint was filed and, to their credit, repeatedly called plaintiff's attention to the problem. No surprise or prejudice is claimed or could be claimed by defendants in the sense that their opportunity to prepare an adequate defense was adversely affected." 70 Or App at 720.

We gave this explanation for our decision in *Sizemore:*

"Although the two complaints allege a slightly different intent on Leonard's part, they clearly deal with the same 'conduct, transaction, or occurrence * * *.' The original *and* the amended complaint both alleged that defendants were negligent in failing to provide for distribution of the trust on Joseph's death. The complaints differed in their allegations of

Joseph's intent, but the differences did not make the underlying claim significantly different. Under either theory, Craig would eventually be entitled to the entire amount. The amended complaint did not seek greater damages or assert a theory of liability which was significantly different from the original complaint.

"In *Parker v. May, supra,* we held that a trial court has discretion to allow an amended pleading which changes the plaintiff from one who had no claim to one who did. There, as here, both complaints concerned the same events and the defendants were not prejudiced by the amendment. We do not think that the relatively minor refocusing of plaintiff's claim makes this case different in substance from *Parker.* The court properly allowed the amended complaint." 79 Or App at 356-57. (Emphasis in original.)

There is a seeming duality in the analysis set forth in *Welch, Parker* and *Sizemore:* each opinion suggests a legal inquiry which focuses on whether the original pleading is sufficient to apprise the defendant that the plaintiff has *a* claim arising out of the conduct, occurrence or transaction; however, each opinion explains its holding as turning on whether there is a similarity or relationship between the original and new claims sufficient to put the defendant on notice that the *specific* claim which is later asserted could arise out of the conduct, occurrence or transaction originally pleaded.[3] We conclude that a new claim cannot relate back to

---

[3] It is noteworthy that the court in *Welch* emphasized the connection between the claims in explaining its decision. The basis for the relation back was that the two claims arose out of the same "transaction." The court observed that "transaction" has a "broader" meaning under ORCP 23C than does "conduct." 296 Or at 222.

The duality we have described in the Oregon cases is also to be found in the federal decisions construing FRCP 15(c), the counterpart of ORCP 23C. In *Welch,* the court noted that, although the federal rule is identical to ours, "federal case law is not particularly helpful because the Oregon Rules of Civil Procedure specifically reject the federal approach of notice pleading in favor of the retention of fact pleading." 296 Or at 221. The court nevertheless went on to state that notice is the focus of ORCP 23C and to rely on a scholarly commentary on the federal rule.

We nevertheless find the dissent's reliance on federal case authority construing FRCP 15(c) to be unpersuasive. In the first place, that authority manifests a case-by-case approach from which no principle that is particularly useful to the decision of this case can be derived. *Compare Avila v. I.N.S.,* 731 F2d 616 (9th Cir 1984), and *Williams v. United States,* 405 F2d 234 (5th Cir 1968), *with Fuller v. Marx,* 724 F2d 717 (8th Cir 1984), and *Leachman v. Beech Aircraft Corp.,* 694 F2d 1301 (DC Cir 1982). Moreover, there is now a sufficient body of Oregon case law construing ORCP 23C to make it unnecessary to base our decision of the issue that this case presents on the federal cases.

an earlier pleading unless there is at least enough of a nexus between the claims for the defendant to have been able to have discerned from the first that the existence of the second was a possibility. In the present case, the connection between the original and added claims was tenuous to the point of non-existence, and there was no possibility that notice of the later claims could have been supplied by the facts alleged in the earlier complaints.

The original and first amended complaints sought recovery under the wrongful death statute, ORS 30.020, and alleged no misconduct by the hospital other than negligence. The plaintiffs as individuals were not parties under those complaints, although they were "beneficiaries" of the personal representative's action. ORS 30.020(1). The new claims which they assert and the damages which they seek as individuals are outside the scope of the wrongful death statute and differ drastically from what was asserted and sought in the earlier pleadings.

The graveman of the new claims is that the hospital's *deliberate* actions inflicted emotional injuries *on plaintiffs.* ORS 30.020(1) limits the right of action for wrongful death to cases in which "*the decedent* might have maintained an action, *had the decedent lived,* against the wrongdoer for an injury done by the same act or omission." (Emphasis supplied.) The only injuries to persons or entities other than the decedent for which the statute permits recovery are costs for health, burial and memorial services for the decedent, ORS 30.020(2)(a); pecuniary loss to the estate, ORS 30.020(2)(c); and the heirs' pecuniary loss and loss of society, companionship and services. ORS 30.020(2)(d). Significantly, the only punitive damages the statute contemplates are those to "which the decedent would have been entitled * * * if the decedent had lived." ORS 30.020(2)(e).

Over and above the fact that, by its nature, a wrongful death action is not conducive to notice of claims by individual heirs for infliction of emotional distress, the facts alleged in the personal representative's original and first amended complaints could not have apprised the hospital that the later emotional distress claims could be asserted. Among the principal allegations supporting those claims were that plaintiffs saw the decedent's sufferings and learned that, by defendant's

deliberate choice, no life support measures had been or would be applied. No such allegations were made in the original and first amended complaints. Indeed, those complaints did not even allege that plaintiffs were present at the hospital during the events or that they were ever aware that defendants had elected not to implement life support procedures.

The wrongful death complaints in this case could have provided the hospital with no information about the individual plaintiffs except that they existed and had sustained injuries of the kind specifically enumerated in ORS 30.020(2); the first two complaints could not have enabled the hospital to anticipate an eventual need to defend against the claims that those plaintiffs suffered any compensable emotional distress. *See Parker v. May, supra,* 70 Or App at 720. The trial court was correct in granting both defendants' motions to dismiss.

Affirmed.

**NEWMAN, J.,** concurring in part, dissenting in part.

I concur with the majority that the court did not err when it granted defendant Peterson's motion to dismiss the new plaintiffs' claims for intentional infliction of emotional distress. I dissent, however, from the holding that the court did not err when it dismissed the new plaintiffs' claims against the hospital.

In deciding whether the claims that the new plaintiffs asserted relate back, the majority states that *Welch, Parker,* and *Sizemore* each

> "explains its holding as turning on whether there is a similarity or relationship between the original and new claims sufficient to put the defendant on notice that the *specific* claim which is later asserted could arise out of the conduct, occurrence or transaction originally pleaded." 83 Or App at 31. (Emphasis in original.)

*Welch, Parker* and *Sizemore* do not hold that the test is so narrow. Indeed, the majority adopts a broader test:

> "We conclude that a new claim cannot relate to an earlier pleading unless there is at least enough of a nexus between the claims for the defendant to have been able to have discerned

from the first that the existence of the second was a possibility." 83 Or App at 31-32.

It applies that test and concludes:

"In the present case, the connection between the original and added claims was *tenuous to the point of non-existence,* and there was *no possibility that notice* of the later claims could have been supplied by the facts alleged in the earlier complaints." 83 Or App at 32. (Emphasis supplied.)

The majority reasons that the connection between the new and original claims was "tenuous to the point of non-existence" and that there was "no possibility of notice," because the new claims 1) are for intentional rather than negligent conduct; 2) seek different damages; and 3) contain additional allegations of fact, including that new plaintiffs were present when the decedent died and learned then of the hospital's decision to withhold life support.

The majority's reasoning is not persuasive. The conduct of the hospital that gave rise to the new claims has significant and substantial similarities to the conduct that gave rise to the original claim. The original claim alleged that the hospital had knowledge of decedent's throat condition and ingestion difficulties, that its staff administered fluids which caused decedent to aspirate and suffer respiratory failure and that the hospital staff negligently did not administer life support, which failure resulted in decedent's death. The new claims allege that substantially the same conduct was intentional or reckless, rather than negligent. The majority's test does not require that the original and new claims state identical factual allegations or be based on identical legal theories. Neither does the absence of a request for punitive damages in the original claim compel a contrary conclusion. Under the majority's test, the question is simply whether there is a sufficient nexus between the original claim and the later claim so that defendant hospital could discern from the first claim that the existence of the second is a possibility. The majority's test does not require that the original and new claim seek to recover identical damages.

Furthermore, although the majority emphasizes that the original claim did not allege that new plaintiffs were present when decedent died or that they learned then of the hospital's conduct, the issue is whether the original claim gave

notice to defendant hospital of the possible existence of the new claims, not whether there was notice of every material fact which is an element of the new claims. The original claim identified the decedent's heirs and alleged that, as a result of the hospital's conduct, they had suffered the loss of the decedent's society and companionship. Those allegations gave the hospital notice of the possibility that those heirs had suffered emotional distress as a result of their loss. To argue, as the majority does, that the connection was "tenuous to the point of non-existence" is unconvincing. Even under the majority's test, I would hold that there was at least enough of a nexus between the claims for defendant to be able to discern from the first that the existence of the second is a possibility.

Moreover, I do not share the majority's reluctance to turn to federal authority for guidance. The majority asserts, 83 Or App at 31 n 3, that federal cases that construe FRCP 15(c) (identical to ORCP 23C) are unpersuasive, because 1) they manifest a case by case approach from which no particularly useful principle can be derived; and 2) there is now a sufficient body of Oregon case law that construes ORCP 23C so that reference to federal cases is unnecessary. I disagree. We can derive useful principles from the federal cases. Moreover, because there is no reported Oregon case construing ORCP 23C in which the new claim was based on substantially the same conduct but a different theory of liability, it is appropriate to look to cases decided under FRCP 15(c). Although, as the majority states, the court noted in *Welch v. Bancorp Management Services,* 296 Or at 221, that "federal caselaw is not particularly helpful because the Oregon Rules of Civil Procedure specifically reject the federal approach of notice pleading in favor of the retention of fact pleading," it nevertheless went on to state that *notice* is the focus of ORCP 23C:

> "The apparent rationale for allowing a post-limitation amendment to relate back to the pre-limitation pleading, and thereby defeat the statute of limitations, is that a party who is notified of litigation concerning certain conduct (*Campbell, supra* 274 Or at 254) or a given transaction or occurrence through the original complaint, has been given the notice that the statute of limitations was intended to assure. Wright and Miller, [Federal Practice and Procedure] § 1496, 482-83, § 5103, 535." 296 Or at 221.

The court's citation to Wright and Miller shows that it believed that federal authority *is* helpful in interpreting the Oregon rule. *See also State ex rel Gattman v. Abraham,* 302 Or 301, 306, 729 P2d 560 (1986). We have also found federal court analyses of FRCP 15(c) to be helpful. *See Waybrant v. Clackamas County,* 54 Or App 740, 744, 635 P2d 1365 (1981). I think it is appropriate to make use of federal authority here.

In *Williams v. United States,* 405 F2d 234 (5th Cir 1968), the mother of a boy injured by an Army firecracker brought an action as next friend of her injured son against the United States. After the two-year Statute of Limitations had elapsed and the plaintiff had obtained a verdict on the merits, she moved to amend her complaint to add a claim on her own behalf for the loss of her son's services. The court held that the original complaint, which revealed the existence of a minor and the mother and the assertion by her of a claim for her son, put the defendant on notice that an individual claim of the mother was also involved, because it "reasonably indicate[d] a likelihood that [she had incurred] losses of a recoverable kind." 405 F2d at 239. Accordingly, it allowed the amendment.

A number of courts have followed *Williams.* In *Avila v. I.N.S.,* 731 F2d 616 (9th Cir 1984), the court held that a father's claim for his expenses and damages related back to his earlier claim on behalf of his mentally impaired son for wrongful deportation.

> "In deciding whether an amendment relates back to the original claim, *notice to the opposing party of the existence and involvement of the new plaintiff* is the critical element." 731 F2d at 620. (Emphasis supplied.)

Citing *Williams,* the court held that the original claim gave defendant adequate notice of the father's "existence and involvement," because

> "[t]hat claim * * * identified Jesus as Daniel's father and explained Daniel's disability. The nature of Jesus' damages was such that the government would reasonably expect to occur from its wrongful deportation of a mentally impaired citizen." 731 F2d at 620.

*See also Cunningham by Cunningham v. Quaker Oats Co.,* 107 FRD 66 (WD NY 1985); *Yorden v. Flaste,* 374 F Supp 516 (Del 1974).

*Williams* was distinguished in *Leachman v. Beech Aircraft Corp.,* 694 F2d 1301 (DC Cir 1982), an action arising out of a plane crash. The court held that the later claim of the original plaintiff's wholly owned corporation for property damage did not relate back to her earlier claim for personal injury. The court reasoned that the nature of the plaintiff's original complaint gave the defendant no notice of the existence of the corporation and, even with such notice, it would not have given the defendant reason to know of the corporation's potential property claim.

> "[The corporation's] claim was simply a new cause of action, arising out of the same occurrence to be sure, but brought by an essentially unrelated victim." 694 F2d at 1310.

I derive from the federal cases three criteria to determine whether new plaintiffs' claims for intentional infliction of emotional distress relate back to the first amended complaint: that complaint must (1) describe the conduct, transaction or occurrence from which the later claims arise; (2) give the defendant notice of the new plaintiffs' existence and (3) give the defendant notice that the new plaintiffs may have suffered losses of a recoverable kind arising out of the conduct, transaction or occurrence.

Here, the first amended complaint, filed within the limitation period of ORS 12.110(1), described the events leading to the death of the decedent. Substantially the same events gave rise to plaintiffs' subsequent claims against the hospital for intentional infliction of emotional distress. Moreover, the complaint also notified the hospital of plaintiffs' existence as the son and the wife of the decedent and as beneficiaries of his estate. Accordingly, the first two criteria for relation back are met.

The third criterion is also met. Plaintiffs were the real parties in interest in the original wrongful death action by the personal representative. *Christensen v. Epley,* 287 Or 539, 548, 601 P2d 1216 (1979). Although the first amended complaint did not allege that new plaintiffs were present at the decedent's death, it described them as the wife and the son and the beneficiaries of the decedent's estate and gave notice to the hospital that plaintiffs had suffered losses of a recoverable kind.

Accordingly, whether we apply the test that the majority opinion sets forth or use the principles derived from the federal cases, I would hold that plaintiffs' claims against the hospital for intentional infliction of emotional distress relate back to the first amended complaint and were timely filed.