Argued and submitted December 12, 2000, judgment in favor of plaintiff Sherri Walters reversed and remanded to trial court with instructions; judgment in favor of plaintiff Cheyenne Walters affirmed August 22, respondents' petition for reconsideration filed September 4 allowed by opinion October 31, 2001
See 177 Or App 527 (2001)

Kenny WALTERS,
*Plaintiff,*

*and*

Sherri WALTERS
and Cheyenne L. Walters,
by and through her guardian ad litem Sherri Walters,
*Respondents,*

*v.*

John M. HOBBS, M.D.,
and John M. Hobbs, Jr., M.D., P.C.,
an Oregon professional corporation,
*Appellants,*

*and*

MERLE WEST MEDICAL CENTER,
an Oregon non-profit corporation,
*Defendants.*

9500602CV; A102298

30 P3d 1214

Robert Cowling argued the cause for appellants. With him on the briefs were Benjamin M. Bloom and Hornecker, Cowling, Hassen & Heysell, L.L.P.

Rebecca Whitney-Smith argued the cause for respondents. With her on the brief was Ratliff & Whitney-Smith.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

HASELTON, P. J.

---

* Deits, C. J., *vice* Ceniceros, S. J.

## HASELTON, P. J.

Defendant Hobbs[1] appeals from money judgments entered on jury verdicts in favor of plaintiffs Sherri Walters (Sherri) and her daughter Cheyenne Walters (Cheyenne) by and through her guardian ad litem Sherri Walters in this medical malpractice action. Plaintiffs alleged that Hobbs was negligent in failing to provide appropriate prenatal care and medical treatment to Sherri and Cheyenne during the period preceding and immediately after Cheyenne's birth, resulting in injuries to both Sherri and Cheyenne. On appeal, Hobbs raises a battery of challenges to both verdicts. We reject Hobbs's assignments of error pertaining to Cheyenne's claims and, thus, affirm the verdict in favor of Cheyenne. However, we agree with Hobbs that the trial court erred in permitting Sherri to amend the complaint after the statute of limitations had expired to add new allegations which, ultimately, provided the basis of the jury's award of damages to Sherri. Specifically, we conclude that those allegations did not "relate back" to the prior, timely filed complaint. Consequently, the judgment for Sherri must be reversed.

Cheyenne was born on February 15, 1993. On February 10, 1995, plaintiffs filed their initial complaint. That complaint, styled as a "complaint for personal injury," listed as plaintiffs Kenny Walters, Sherri Walters, and Cheyenne L. Walters by and through her guardian ad litem Sherri Walters. It alleged, in pertinent part, that between April 23, 1992, and February 16, 1993, a physician-patient relationship existed between plaintiffs and Hobbs, and that Hobbs provided prenatal and obstetrical care to Sherri throughout her pregnancy. The complaint further alleged that, at her birth some two weeks after her due date, Cheyenne weighed three pounds 12 ounces. Plaintiffs alleged that they and Hobbs initially planned for a vaginal delivery but, after Sherri was admitted to the hospital on February 15, 1993,

---

[1] Both John M. Hobbs, M. D., individually and John M. Hobbs, Jr., M. D., P. C., a professional corporation, are defendants on appeal. We refer to these defendants collectively as Hobbs. The complaint also alleged that defendant Merle West Medical Center was negligent in numerous respects as well. Plaintiffs' claims against Merle West Medical Center are not at issue on appeal.

stress tests indicated fetal distress and, after a failed attempt to induce labor, a caesarian section delivery was performed.

Additionally, the complaint alleged that: (1) Cheyenne was stained with meconium at birth,[2] was placed on a ventilator due to respiratory distress, and was transferred to another hospital shortly after birth due to her condition; (2) Cheyenne required lengthy hospitalization, followed by home care that included both medication and ventilation oxygen; and (3) Cheyenne suffered permanent damage to her lungs, as well as significant and irremediable stunting of her growth and development.

The original complaint's specifications of negligence are central to our analysis of the "relation back" issue, so we reproduce them verbatim:

"That defendant John M. Hobbs herein was negligent in the following particulars, causing the hereinafter following injuries to the plaintiffs:

"A.  In failing to properly monitor the growth of minor Cheyenne L. Walters during the prenatal phase while providing obstetrical care and treatment to plaintiff Sherri Walters;

"B.  In failing to properly foresee and prepare for a small-for-gestational-age baby in light of the fact that defendant Hobbs was fully aware of medications plaintiff Sherri Walters was taking which increased the potentiality for a small fetus;

"C.  In failing to take serial ultrasound during the prenatal period in light of the fact that defendant Hobbs was fully aware that plaintiff Sherri Walters was taking medications which increased the potentiality of a small-for-gestational-age fetus;

"D.  In failing to properly prepare for and anticipate a small-for-gestational-age fetus, in light of factors that indicated that this was a high-risk pregnancy, including that plaintiff Sherri Walters was taking

---

[2] Meconium is "a dark greenish mass of desquamated cells, mucus and bile that accumulates in the bowel during fetal life and is discharged shortly after birth[.]" *Webster's Third New Int'l Dictionary*, 1401 (unabridged ed 1993).

medication for a heart condition, which medication raised the potentiality of intrauterine growth retardation;

"E. In failing to arrange for the delivery of plaintiff Cheyenne L. Walters at a facility properly equipped and staffed with personnel competent to handle a high-risk pregnancy when it ought to have been anticipated that the fetus would be small for gestational age;

"F. In failing to have a pediatrician present at the time of delivery or immediately available at the time of delivery of Cheyenne L. Walters, in light of the fact that Sherri Walters' pregnancy was a high-risk pregnancy and there was a known risk that plaintiff Cheyenne L. Walters would be small for her gestational age;

"G. In failing to undertake ultrasound at times critical for ascertaining the approximate size of fetus Cheyenne L. Walters prior to her birth on February 15, 1993, which would have indicated that she was a small-for-gestational-age fetus;

"H. In allowing plaintiff Sherri Walters to go two weeks after her estimated due date for delivery of Cheyenne L. Walters, which increased the likelihood of meconium release and subsequent aspiration of meconium into the lungs before her birth, resulting in damage to lung tissue inhibiting Cheyenne's ability to inhale oxygen and exhale waste products and requiring forced oxygen resulting in permanent lung damage after birth;

"I. In failing to properly follow Sherri Walters during the course of her prenatal period in light of the fact that her pregnancy with plaintiff Cheyenne L. Walters was a high-risk pregnancy and that it was known to defendant Hobbs that Sherri Walters was taking medication which increased the potentiality of a small-for-gestational-age fetus, sometimes referred to as intrauterine growth retardation, which would require early delivery, as soon as growth and lung maturity would allow;

"J. In failing to advise Sherri Walters that a high-risk pregnancy such as hers should be treated and followed by a perinatalogist and delivery should occur in a tertiary care facility where proper equipment and appropriate specialists are readily available."

In their original complaint, plaintiffs sought damages as follows:

"That as a result of the negligence of the defendants herein, plaintiff Cheyenne L. Walters has suffered permanent lung damage, stunting her growth, and damage to her nervous system, all of which has caused plaintiff in the past and will in the future cause plaintiff Cheyenne L. Walters to experience pain and suffering, limitation of physical pursuits and impaired earning capacity all to plaintiff Cheyenne L. Walters' general damages in the sum of $4,000,000.00.

"That in light of the foregoing, plaintiffs Kenny Walters and Sherri Walters have incurred, and will incur, medical bills on behalf of minor Cheyenne Walters in the approximate amount of $500,000.00.

"That in light of the foregoing, plaintiffs Kenny Walters and Sherri Walters will in the future incur damages due to the loss of earnings and services from minor Cheyenne L. Walters.

"That as a direct and proximate result of the defendants' negligence herein, plaintiff Sherri Walters has suffered emotional distress from witnessing the birth of plaintiff Cheyenne L. Walters, wherein it was apparent that she was covered with meconium and in fetal distress which required emergency neonatal care and treatment including, but not limited to, resuscitation and eventual transfer to a hospital properly equipped to address her medical needs, all to her general damages in the amount of $500,000.00."

In their prayer for relief, plaintiffs sought a total of $1,000,000 in economic damages and $4,000,000 in noneconomic damages for Cheyenne, $500,000 economic damages for Sherri and Kenny Walters, $500,000 in noneconomic damages for Sherri, as well as an unspecified amount "for damages due to loss of earnings and services from minor Cheyenne L. Walters" for Sherri and Kenny Walters.

In May 1995—more than two years after the professional relationship had ended—Hobbs filed an ORCP 21 motion seeking, in pertinent part, to strike the above-quoted paragraph pertaining to Sherri's emotional distress from witnessing Cheyenne's birth on the ground that it was an attempt to plead a cause of action based upon infliction of emotional distress but that plaintiffs had failed to plead the required elements. Alternatively, Hobbs asserted that plaintiffs' claim for damages in that paragraph should be stricken because damages "for mental disturbance without accompanying physical injury are only available in situations involving intentional acts of a flagrant character or where there has been a serious invasion of the plaintiff's rights," citing *Saechao v. Matsakoun*, 78 Or App 340, 717 P2d 165 (1986). The trial court granted Hobbs's motion.

In August 1995, plaintiffs repleaded, adding to their specific allegations of negligence that Hobbs had failed to induce labor in a timely manner "prior to the time that fetal distress was present necessitating delivery by cesarean section rather than the planned upon vaginal delivery, thus, substantially increasing the risks to plaintiff Sherri Walters in light of her then existing cardiac condition and causing her to undergo general surgery that might have been avoided with proper care and monitoring[.]" Plaintiffs further alleged:

"That as a direct and proximate result of the defendants' negligence herein, plaintiff Sherri Walters has suffered direct physical injury and serious emotional distress as follows:

"A.   From having to undergo a stress test in which fluid was dripped into her arm intravenously to stimulate contractions while nursing personnel observed the fetus' heartbeats to determine how it would cope with the stress of contractions;

"B.   From having to undergo fetal monitoring in the hours prior to delivery of the fetus on February 15, 1993, during which time plaintiff observed decelerations of the baby's heartbeat causing grave concern and distress to the plaintiff for her own safety and well-being, and the safety and well-being of the fetus;

"C.    By having to undergo major surgery involving an emergency cesarean section to deliver the fetus rather than the planned upon natural childbirth, the strong possibility existing that a cesarean section may have been unnecessary if the plaintiff had been properly monitored and labor induced prior to the time fetal distress was present thus allowing for a natural vaginal delivery;

"D.    By being placed at serious risk in having to undergo general surgery even through plaintiff had been advised by her cardiologist to attempt to have the child naturally due to plaintiff's cardiac condition, the strong possibility existing that a cesarean section may have been unnecessary if the plaintiff had been properly monitored and labor induced prior to the time fetal distress was present thus allowing for a natural vaginal delivery;

"E.    By having prolonged healing time and pain due to major surgery involving a cesarean section that more likely than not would have been avoided by careful monitoring of the pregnancy and inducement of labor prior to the time fetal distress was present;

"F.    By having to take nine months leave from her work to recuperate from the surgery and to care for the seriously ill infant Cheyenne L. Walters, thus losing seniority at her place of employment and as a direct consequence of this loss of seniority plaintiff was laid off from her job even though she had worked at the same place of employment for a twelve year period of time[.]"

Plaintiffs further alleged that Hobbs acted recklessly and with wanton disregard of the high probability that severe emotional distress would result by holding himself out to be a specialist in high-risk pregnancies, by failing to refer Sherri to a qualified specialist in high-risk pregnancy who had access to a facility equipped for the delivery of, and care for, small-for-gestational-age babies, by advising Sherri to leave the hospital and return for delivery on the following day despite serious questions as to the well-being of Sherri and the fetus, and by failing to transport Sherri to a facility equipped to provide proper care when it became apparent

that fetal distress was present.[3] Finally, the amended complaint alleged that Sherri was entitled to recover noneconomic damages of $500,000.

Hobbs moved to strike the new allegations on the ground that they did not relate back to the original pleading under ORCP 23 C and that the amended complaint was not filed within the statute of limitations. The trial court denied Hobbs's motion.

The trial was held from January 15 through March 3, 1998. The operative complaint, by that time, was plaintiffs' third amended complaint which included a separate claim by Sherri for negligence based on allegations that were substantially the same as those in the amended complaint, which the court had ruled related back to the original complaint under ORCP 23. The jury returned verdicts in favor of plaintiffs, awarding Cheyenne $57,741 in economic damages and $655,000 in noneconomic damages, and awarding Sherri $55,000 in economic damages and $500,000 in noneconomic damages. The present appeal ensued.

On appeal, Hobbs raises eight assignments of error. Of those eight assignments, five—four challenging the admission or exclusion of evidence,[4] and one challenging the denial of a motion to strike a paragraph from the complaint[5]—pertain either to Cheyenne's claims alone or to both Cheyenne's and Sherri's claims. The remaining three assignments of error—one challenging the denial of Hobbs's motion to strike the new allegations of plaintiffs' amended complaint,[6] and two challenging evidentiary rulings[7]—pertain exclusively to Sherri's claims.

---

[3] Unlike the original complaint, the amended complaint did not assert a claim for emotional distress damages for Sherri based on her witnessing of Cheyenne's birth.

[4] Assignments of error 2, 6, 7A and 7B.

[5] Assignment of error 3.

[6] Assignment of error 1.

[7] Assignments of error 4 and 5.

We reject, without further discussion, the five assignments of error that either exclusively or partially pertain to Cheyenne's claims. Accordingly, we affirm the judgment for Cheyenne. However, with regard to Sherri, we conclude that the trial court erred in denying Hobbs's motion to strike the new allegations from plaintiffs' amended complaint. Because those allegations provided the basis of Sherri's ultimate recovery, the judgment for Sherri must be reversed. That disposition obviates any need to consider the remaining two evidentiary assignments of error that pertain only to the judgment in favor of Sherri.

Plaintiff's original complaint was filed February 10, 1995, within two years of the termination of the professional relationship on February 15, 1993. The amended complaint was filed in August 1995. Hobbs argues—and Sherri does not dispute—that, unless the amended complaint related back to the original complaint, the allegations in the amended complaint and, by extension, the substantially indistinguishable allegations in the third amended complaint concerning physical harm and emotional distress to Sherri are time-barred and, thus, are not actionable. *See generally* ORS 12.110(4) (providing two-year statute of limitations for medical malpractice).

ORCP 23 C provides, in relevant part:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Sherri asserts that the claims involving physical harm to her arose out of the same conduct, transaction, or occurrence set forth in the original complaint. Sherri argues that the prenatal care and the cesarean section delivery of Cheyenne were the "occurrences" set forth in the original complaint and that the physical harm to Sherri arose out of those occurrences. Conversely, Hobbs argues that the new allegations relate to tortious conduct that was not at issue in the original complaint giving rise to damages not alleged in the original complaint, and, thus that the new allegations could not relate back to the original complaint.

The Oregon Supreme Court has, on two occasions, discussed this aspect of ORCP 23 C. In *Welch v. Bancorp Management Services*, 296 Or 208, 675 P2d 172 (1983), the court first considered the recently adopted ORCP 23 C. The court noted that, although the rule was based on a similar federal rule of procedure, federal case law would not be particularly helpful in interpreting the Oregon rule because Oregon's rules "specifically reject the federal approach of notice pleading in favor of retention of fact pleading." *Id.* at 221. Notwithstanding that difference, however, the court noted that the legislature chose the inclusive federal language which encompassed not only "conduct" (which earlier Oregon cases had endorsed in the relation-back context) but also "transaction" and "occurrence." In applying the rule, the court identified several facts as pertinent to the analysis:

> "The original complaint * * * contained allegations of defendants' misrepresentations *to the Trust.* [The amended complaint] for the first time made additional allegations as to defendants' misrepresentations *to plaintiff* during approximately the same period. Plaintiff did not allege any new damages arising out of the second alleged misrepresentation." *Id.* at 220 (emphasis in original).

The court rejected the defendants' arguments that, because different misrepresentations were involved, the amended complaint could not relate back. The court concluded that the misrepresentation alleged in the amended complaint, given that it involved "interfering with the same contract substantially at the same time," would "unite[ ] with the originally pleaded misrepresentation to the Trust to cause the single injury alleged in the original complaint." *Id.* at 222.

Subsequently, in *Caplener v. U. S. National Bank*, 317 Or 506, 857 P2d 830 (1993), the court held that an amended complaint that alleged a number of new tort claims did not relate back to the original complaint for breach of a loan agreement by the defendant bank. The court noted that, for the most part, the new claims were based on factual allegations concerning events that occurred after the loan at issue in the original complaint was denied. One of the tort claims, however, was based on allegations that the defendant was negligent in allowing its agents to make oral commitments to lend the money in question, and in over-promoting

defendant's willingness to make the loan. *Id.* at 523. That claim, the court determined, did relate back to the original complaint because "those events appear to have occurred at the time of, and directly involve, the denial of the loan at issue in the original pleading." *Id. See also Allison v. Kleinman,* 126 Or App 298, 301-02, 868 P2d 764 (1994) (following *Caplener,* and concluding that a complaint that alleged that the defendant accountants had failed to advise the plaintiffs about delinquent fuel taxes owed by the purchaser of certain equipment did not relate back to an earlier complaint that alleged that the defendant accountants had negligently advised the plaintiffs concerning sale of equipment to the purchaser of the equipment, resulting in the plaintiffs having inadequate security interests).

We also have had occasion to apply the "relation back" provisions of ORCP 23 C on a number of occasions. *Evans v. Salem Hospital,* 83 Or App 23, 730 P2d 562 (1986), *rev den* 303 Or 331 (1987), is exemplary. In *Evans,* the plaintiff, who was the decedent's son, brought a wrongful death action in his capacity as personal representative of the decedent's estate against the defendant hospital, alleging that the defendant administered fluids to the decedent, after which the decedent aspirated the fluids and suffered respiratory failure. *Id.* at 25. The complaint alleged that the hospital was negligent in failing to observe the decedent after the administration of the fluids, in failing to have appropriate life support equipment on hand, and in failing to make sufficient effort to administer life support. The complaint sought damages on the ground that, as a result of the hospital's negligence, the decedent's heirs had been deprived of the decedent's future earnings, society, companionship and services. *Id.* at 25-26. After the statute of limitations had run, the plaintiff amended the complaint to add claims on behalf of the decedent's wife for intentional and reckless infliction of emotional distress and also on his own behalf as an individual rather than in his capacity as personal representative of the estate. *Id.* at 26. Those emotional distress claims were based on allegations that the wife and son had been informed that no effort would be made to revive the decedent, and that they had personally observed the decedent, who had been left unattended and in apparent distress after the defendant had

decided to withhold life support. *Id.* They sought damages to compensate for their emotional distress, as well as punitive damages. *Id.* at 27.

In evaluating whether the new claims related back to the original pleading, we synthesized from earlier cases, including *Welch*, the principle that the relation-back inquiry turns "on whether there is a similarity or relationship between the original and new claims sufficient to put the defendant on notice that the *specific* claim which is later asserted could arise out of the conduct, occurrence or transaction originally pleaded." *Evans*, 83 Or App at 31 (emphasis in original). We concluded that

"a new claim cannot relate back to an earlier pleading unless there is at least enough of a nexus between the claims for the defendant to have been able to have discerned from the first that the existence of the second was a possibility." *Id.* at 31-32.

We then described the nexus in *Evans* as "tenuous to the point of non-existence" for several reasons. *Id.* at 32. First, we pointed out that the plaintiffs as individuals were not parties under the original complaints, and that the damages sought in the amended complaint were outside the scope of the wrongful death statute and "differ drastically from what was asserted and sought in the earlier pleadings." *Id.* Second, the gravamen of the new claims was that the defendant had inflicted injuries on them, whereas the original complaints had alleged only injury to the decedent or the decedent's estate. *Id.* Finally, we noted:

"Among the principal allegations supporting those claims [in the amended complaint] were that plaintiffs saw the decedent's sufferings and learned that, by defendant's deliberate choice, no life support measures had been or would be applied. No such allegations were made in the original and first amended complaints. Indeed, those complaints did not even allege that plaintiffs were present at the hospital during the events or that they were ever aware that defendants had elected not to implement life support procedures." *Id.* at 32-33.

Consequently, we held that the earlier complaints "could not have enabled the hospital to anticipate an eventual need to

defend against the claims that those plaintiffs suffered any compensable emotional distress." *Id.* at 33.

■      In subsequent cases, we have followed our formulation from *Evans* for determining whether amended complaints related back to earlier complaints. For example, in *Hendgen v. Forest Grove Community Hospital*, 109 Or App 177, 179, 818 P2d 966 (1991), the plaintiff initially alleged that a doctor and hospital were negligent in failing to diagnose and treat an intestinal condition. In her amended complaint, the plaintiff added a claim for intentional infliction of emotional distress, alleging for the first time that unnamed hospital employees "berated her, shoved her onto examining tables and forced her to assume positions that caused her extreme pain." *Id.* at 180. We held that the added claims did not relate back to the original complaint:

> "The newly alleged conduct has no discernible connection to, and is of an altogether different nature than, that originally alleged. The original pleading claimed only that a named emergency room doctor had been negligent. The second amended complaint, however, contains allegations that plaintiff was subjected to the intentional infliction of emotional distress before and after [the doctor's] examination, at the hands of other hospital employees. She does not allege that [the doctor] was responsible for those other employees or that he was aware of their actions. We hold that the facts alleged in the original complaint were insufficient to allow hospital to discern that it might also be subject to an emotional distress claim as a result of other hospital employees' conduct[.]" *Id.* at 181.

As all of the cases on this question acknowledge, the essential inquiry under ORCP 23 C is one of notice. *See, e.g., Welch*, 296 Or at 221. An amended complaint filed after the limitations period may relate back "if the defendant would have been able to discern from the earlier pleading a potential for the additional basis of liability." *Jeffries v. Mills*, 165 Or App 103, 119, 995 P2d 1180 (2000), *citing Evans*, 83 Or App at 32. Thus, the question here reduces to whether Hobbs would have been able to discern from plaintiffs' original pleading the potential for liability for physical harm to Sherri *caused by acts that were different from those originally*

*alleged to have caused physical harm to Cheyenne and emotional harm to Sherri.*

We return to, and summarize the key differences in, the factual allegations in the complaints. *See* 176 Or App at 198-200, 201-02 (setting out pleadings). The original complaint alleged that Hobbs negligently failed to monitor Cheyenne's growth when she was in utero and failed to prepare for a small-for-gestational-age baby despite knowledge that Sherri was taking a medication that could cause her baby to be small for its gestational age. More particularly, the complaint alleged that Hobbs: (1) should have taken serial ultrasound images during the pregnancy; (2) should have arranged for delivery at a facility that had personnel and equipment to care for a small-for-gestational-age baby; (3) should have provided Sherri with sufficient advice and referrals in light of the fact that her pregnancy was high risk; and (4) should not have allowed Sherri "to go two weeks after her estimated due date for delivery of Cheyenne L. Walters, which increased the likelihood of meconium release and subsequent aspiration of meconium into the lungs before her birth, resulting in damage to lung tissue inhibiting Cheyenne's ability to inhale oxygen and exhale waste products and requiring forced oxygen resulting in lung damage after birth[.]" *Id.*

Two other aspects of the original complaint are particularly important. *First*, that complaint did not allege physical injury to Sherri, only emotional harm. *Second*, the sole alleged cause of the emotional harm was that Sherri had witnessed Cheyenne's birth, with Cheyenne being covered in meconium and in distress.

In contrast, the amended complaint, for the first time, alleged physical injury to Sherri, and no longer sought to recover for Sherri's emotional distress at witnessing Cheyenne's birth. In particular, the amended complaint introduced entirely new specifications of negligence as to Sherri: (1) that Sherri underwent a stress test and fetal monitoring while nursing personnel and Sherri observed decelerations in the fetus' heartbeats; (2) that Sherri underwent a cesarean section delivery that was risky in light of Sherri's heart condition, when "the strong possibility exist[ed] that a

cesarean section may have been unnecessary if the plaintiff had been properly monitored and labor induced prior to the time fetal distress was present thus allowing for a natural vaginal delivery"; (3) that Sherri had prolonged pain due to the cesarean section; and (4) that Sherri had to take nine months leave from her work to recuperate from the cesarean section and to care for Cheyenne. *See* 176 Or App at 201-02.

In sum, all of the *physical* harm alleged in the original complaint was harm to Cheyenne, and the only alleged harm to Sherri was the emotional harm alleged to be the result of observing the harm to Cheyenne. The acts alleged to have caused the physical harm to Cheyenne were failure to discern in a timely manner and prepare for the fact that she was small for her gestational age, and, at least by implication (given the allegations that the meconium release occurred because Cheyenne was delivered two weeks after due date and caused the lung damage), failure to ensure that Cheyenne was delivered at an earlier date. The only possible nexus between the acts alleged to cause physical harm to Cheyenne pleaded in the original complaint and the acts alleged to cause physical harm to Sherri as pleaded in the amended complaint was the allegation in the original complaint that Hobbs negligently allowed Sherri "to go two weeks after her estimated due date." The amended complaint alleges—or, at least, it may be inferred from the amended complaint—that the physical harm to Sherri (undergoing a stress test and fetal monitoring, undergoing a cesarean section delivery, recovering from a cesarean section delivery) resulted from Hobbs's negligence in allowing Sherri "to go two weeks after he estimated due date." The question, though, is whether that was "enough of a nexus between the claims for the defendant to have been able to have discerned from the first that the existence of the second was a possibility." *Evans*, 83 Or App at 31-32.

Although the original complaint alleged that Cheyenne was delivered by cesarean section and that the parties had originally intended a vaginal delivery, that complaint did not state or imply either that a cesarean section delivery was unnecessary, was required due to the alleged

negligent acts by Hobbs, or was the cause of any of the damages claimed. Similarly, although the original complaint alleged that Sherri had undergone a stress test and fetal monitoring before Cheyenne's birth, it did not suggest that such tests were unnecessary, were negligently performed, or were the cause of any of the damages claimed. In short, while Hobbs could reasonably ascertain from the original complaint that plaintiffs were alleging that Cheyenne should have been delivered at a different *time* and that *she* suffered physical harm as a result, there was nothing in that complaint from which Hobbs should have inferred that Cheyenne should have been delivered by a different *method* and that *Sherri* suffered physical harm as a result. Moreover, as noted, the original complaint contained no suggestion that the fetal monitoring or stress test caused harm to Sherri.

That contrast between the original and amended pleadings starkly distinguishes this case from *Welch*. There, both the original and amended complaints alleged misrepresentations by the same defendant that resulted in interference with the same contract, resulting in the same damages, although the amended complaint alleged a misrepresentation to an additional party that was not alleged in the earlier pleading. *Welch*, 296 Or at 220, 222. In short, the added allegation in *Welch* was that the defendant had done something tortious concerning the same predicate facts, resulting in the same damages to the same party, as was specified in the original pleading. Thus, in *Welch*, the later-alleged misrepresentation "unite[d] with the originally pleaded misrepresentation * * * to cause the *single injury* alleged in the original complaint." *Id.* at 222 (emphasis added).

Here, by contrast, the amended complaint not only alleges different tortious acts (fetal monitoring, stress tests, unnecessary cesarean delivery), but also alleges that (1) those newly pleaded acts resulted in physical harm to a plaintiff who was not alleged in the original complaint to have been physically harmed; and (2) the plaintiff was damaged in a different manner than that alleged in the original complaint. The specifications of negligence in the different complaints here did not "unite" to cause a single injury, as was the case in *Welch*.

■ Given those substantial disparities in the pleadings, this case is more analogous to *Evans* than to *Welch*. In *Evans*, as here, the original and amended complaints both related to events at a hospital on a specific occasion, but new damages were sought by new parties (or by parties individually rather than in a representative capacity) based on new factual allegations concerning what had occurred. 83 Or App at 32. We held that there was an insufficient nexus to put the defendant on notice that the later asserted claim might arise out of the occurrence or transaction originally pleaded. *Id.* We acknowledge that one of the circumstances we pointed to in *Evans* was that the original complaint did not even allege that the plaintiffs were physically present, where here, Sherri necessarily was present during the prenatal care and delivery of her child. Nevertheless, nothing in the original complaint here suggested that any negligent conduct caused any type of harm to Sherri other than the alleged emotional harm from witnessing the birth.[8]

In sum, we conclude that given the material differences between the allegations of the original and amended complaints as to: (1) the nature of Hobbs's alleged tortious conduct, (2) the source of causation of injury to Sherri, and (3) the nature of Sherri's alleged injury and resultant damages, there is insufficient similarity or relationship between the original and amended complaints to have put Hobbs's reasonably on notice that Sherri's later asserted claim might arise out of the conduct, occurrence or transaction originally pleaded. *Evans*, 83 Or App at 31. Consequently, the trial court erred in denying Hobbs's motion to strike the new allegations from the amended complaint, and the judgment for Sherri based on those allegations must be reversed.

The judgment in favor of plaintiff Sherri Walters is reversed and the case is remanded to the trial court for entry of judgment in favor of Hobbs; the judgment in favor of plaintiff Cheyenne Walters is affirmed.

---

[8] This case also resembles *Hendgen* in that here, as there, the amended complaint alleged for the first time conduct of an "altogether different nature" that caused different harm from that alleged in the original complaint. 109 Or App at 181.